**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wallace Merrell MILLER,
Defendant-Appellant.**

**No. 85-7142.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 21, 1985.

John L. Carroll, Associate Professor of Law, Walter F. George, School of Law, Mercer University, Macon, Ga., for defendant-appellant.

Charles R. Niven, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before HILL and CLARK, Circuit Judges, and HOBBS*, Chief District Judge.

PER CURIAM:

Wallace Merrell Miller ordered a booklet from Europe depicting minors engaged in sexually explicit conduct. He received the booklet in his post office box in Montgomery, Alabama, and took it to his home, where it remained until seized by federal agents. There was no evidence that Miller had any intent to distribute, sell or trade the booklet.

The district court denied Miller's motion to dismiss the indictment in which he argued that 18 U.S.C. § 2252 does not apply to his conduct and that, if it does, it is unconstitutional. Miller thereupon entered a conditional guilty plea to one count of knowingly receiving child pornography through the mail in violation of 18 U.S.C. § 2252 (1984)[1]. On this appeal, Miller

---

* Honorable Truman M. Hobbs, Chief U.S. District Judge for the Middle District of Alabama, sitting by designation.

**1.** § 2252(a) provides:
Any person who

(2) knowingly receives, or distributes any visual depiction that has been transported or shipped in interstate or foreign commerce or mailed . . ., if

reasserts his grounds for dismissing the indictment. We affirm the action of the district court.

## APPLICABILITY OF THE STATUTE

Miller was convicted under a statute which was originally enacted as the "Protection of Children Against Sexual Exploitation Act.[2]" Congress decided that this Act was necessary because existing laws were inadequate to protect against the use of children as prostitutes or as the subject of pornographic materials. S.Rep. No. 95–438, 96th Cong., 2d Sess. 5–6, *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 40, 42–43. Congress concluded that child pornography and child prostitution had become a highly organized, multimillion dollar industry operating nationwide; that both the children involved and society in general were being harmed by the industry; and that child prostitution and the sale and distribution of child pornography were being conducted, to a large extent, through the mails and other instrumentalities of interstate and foreign commerce.

Congress amended the Act in 1984[3] to delete the "commercial purpose" language from 18 U.S.C. § 2252. As amended, the statute no longer proscribes "knowingly receiv[ing] for the purpose of sale or distribution for sale ... any obscene visual or print medium that has been ... mailed ...," but rather forbids "knowingly receiv[ing] any visual depiction that has been ... mailed...." 18 U.S.C. § 2252(a)(2) (1978); 18 U.S.C. § 2252(a)(2) (1984). Miller contends that Congress amended the statute because it was concerned about individuals who distributed these materials without any commercial purpose. He argues that Congress did not intend for the statute to apply to persons who knowingly receive child pornography without intent to distribute the material.

> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> (B) such visual depiction is of such conduct;
> shall be punished....

"In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The language of 18 U.S.C. § 2252(a)(2) is patently unambiguous; therefore, our only inquiry is whether the plain meaning of the statute is called into question by the legislative history.

In its Report, the House noted:

> Perhaps the most important limitation in existing law is the "commercial purpose" limitation. Utilization of 18 U.S.C. Section 2252 has been inhibited by that statute's limited application to the distribution of child pornography only for commercial purposes.... Many of the individuals who distribute materials covered by 18 U.S.C. Section 2252 do so by gift or exchange without any commercial motive and thus remain outside the coverage of this provision.

H.R.Rep. No. 98–536, 98th Cong., 1st Sess. 2, *reprinted in* 1984 *U.S.Code Cong. & Ad.News* 492, 493. The Committee concluded that "[s]ince the harm to the child exists whether or not those who initiate or carry out the schemes are motivated by profit, the Subcommittee found a need to expand the coverage of the Act by deleting the commercial purpose requirement." *Id.,* H.R.Rep. 98–536 at 2–3; 1984 *U.S.Code Cong. & Ad.News* at 493–94.

■ Miller's contention that he played no part in the distribution network since he did not intend to disseminate the material is specious. Obviously, the industry would disintegrate absent willing buyers, who play a necessary role in any distribution network. Since Miller has failed to show a "clearly expressed legislative intent" that undercuts the statute's unambiguous prohi-

2. P.L. 95–225, 92 Stat. 7 (1978).

3. Child Protection Act of 1984, P.L. 98–292, 98 Stat. 204 (1984).

bition of knowingly receiving child pornography through the mail, we conclude that his conduct is not exempt from the reach of 18 U.S.C. § 2252.

## CONSTITUTIONALITY OF THE STATUTE AS APPLIED TO MILLER[4]

Miller's second argument is that if Section 2252(a)(2) applies to his conduct, the statute violates his right to privacy and is unconstitutional. He contends that his right to possess pornography under *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), implies a right to receive it for his own use.

In *Stanley*, a state officer who was in Stanley's home to search for evidence of bookmaking discovered obscene films in Stanley's bedroom. Stanley was later convicted of violating a Georgia law prohibiting the possession of obscene material. The Supreme Court struck down the conviction, determining that:

> If the First amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.

394 U.S. at 565, 89 S.Ct. at 1248.

The Supreme Court has refused, in subsequent opinions, to enlarge its holding in *Stanley*. In *United States v. Reidel*, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), the district court had relied upon *Stanley* in dismissing an indictment against a defendant charged with the knowing use of the mails for the delivery of obscene material, in violation of 18 U.S.C. § 1461. The district court reasoned that "if a person has the right to receive and possess [obscene] material, then someone must have the right to deliver it to him." 402 U.S. at 355, 91 S.Ct. at 1412.

The Supreme Court rejected this interpretation, noting that in *Stanley* the focus "was on freedom of mind and thought and on the privacy of one's home. *[Stanley]* does not require that we fashion or recognize a constitutional right ... to distribute or sell obscene materials." 402 U.S. at 356, 91 S.Ct. at 1412. Similarly, in *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 376, 91 S.Ct. 1400, 1408, 28 L.Ed.2d 822 (1971), which involved the issue of whether customs agents could intercept obscene photographs imported for commercial use, the Court concluded that the *Stanley* right "does not extend to one who is seeking ... to import obscene materials from abroad, whether for private use or public distribution."

In *United States v. 12 200 Ft. Reels of Super 8MM. Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the Court rejected the argument that *Stanley* created a right to acquire obscenity. *Stanley*, the Court said, "reflects no more than ... the law's 'solicitude to protect the privacies of life within [the home].'" 413 U.S. at 127, 93 S.Ct. at 2668. On the same day, the Court decided *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973), rejecting the argument that *Stanley* precluded federal regulation of interstate transport of obscene material where the transport was by private carriage or was intended for private use. According to the Court's opinion in *Orito*, "[Thirty-Seven Photographs] and [Reidel] negate the idea that some zone of constitutionally protected privacy follows such material when it is moved outside the home area protected by *Stanley*." 413 U.S. at 141–42, 93 S.Ct. at 2677.

■ Since appellant Miller took the booklet from his post office box directly to his home, he claims that his privacy is so inextricably linked to the conduct the Government seeks to prevent that it cannot constitutionally apply the statute to him. Al-

---

**4.** Neither obscenity nor child pornography is protected by the First Amendment. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

Accordingly, the contours of the right to possess each are coextensive for the purposes of our examination, and prior decisions on the issue of the right to possess obscene materials are controlling in our analysis of this case.

though the Supreme Court has not spoken directly on this point, we think it reasonable to conclude that Miller's argument is foreclosed by *Reidel, Thirty-Seven Photographs, 12 200–Ft. Reels* and *Orito*.

Miller was charged with, and pled guilty to, a crime that occurred before the material ever reached his home. The fact that the booklet ultimately came to rest in his home does not retroactively insulate Miller from prosecution. As explained by the Supreme Court,

> [i]f obscene material unprotected by the First Amendment in itself carried with it a "penumbra" of constitutionally protected privacy, this Court would not have found it necessary to decide *Stanley* on the narrow basis of the "privacy of the home," which was hardly more than a reaffirmation that "a man's home is his castle."

*Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 66, 93 S.Ct. 2628, 2640, 37 L.Ed.2d 446 (1973).

The Court has been emphatic about the limited nature of the *Stanley* right. *See, e.g., Reidel,* 402 U.S. at 356, 91 S.Ct. at 1412; *Thirty-Seven Photographs,* 402 U.S. at 376, 91 S.Ct. at 1408; *12 200–Ft Reels,* 413 U.S. at 127–28, 93 S.Ct. at 2668–69; *Orito,* 413 U.S. at 141–42, 93 S.Ct. at 2676–77. Accordingly, we hold that *Stanley* is not properly expanded to create a right to knowingly receive child pornography through the mail.

Having determined that the statute applies to Miller and proscribes his conduct without damage to his constitutional rights, we hereby AFFIRM the district court.