UNITED STATES of America, Plaintiff,

v.

Michael J. KABALA, Defendant.

No. 87 CR 706.

United States District Court,
N.D. Illinois, E.D.

March 16, 1988.

Stephen R. Sinnott, U.S. Atty's. Office, Matthew R. Bettenhausen, Chicago, Ill., for plaintiff.

David P. Schippers, Chicago, Ill., Harry Schroeder, Flossmoor, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

In this criminal action, defendant Michael J. Kabala ("Kabala") has filed various motions seeking pretrial discovery and a motion to dismiss and for an evidentiary hearing. The Government has filed a consolidated response to the motions for pretrial discovery and a separate response to the motion to dismiss and for an evidentiary hearing. Kabala filed a reply to the Government's response to the motion to dismiss but did not reply to the response to the pretrial motions. For the reasons stated in this opinion, we deny Kabala's motions.

### MOTION FOR DISCOVERY AND INSPECTION PURSUANT TO FED.R.CRIM.P. 16

■ In paragraph 1 of his motion for discovery, Kabala requests that the Government disclose its list of prospective witnesses. We deny Kabala's motion for disclosure on two bases. First, Fed.R. Crim.P. 16 does not provide Kabala with the "right" to demand the Government's list of prospective witnesses. *See United States v. Bouye*, 688 F.2d 471, 473–74 (7th Cir.1982). Second, this Court declines to exercise its discretion to order disclosure

because we find that the circumstances of this case do not warrant such disclosure. *Cf. United States v. Jackson*, 508 F.2d 1001, 1005–07 (7th Cir.1975) (The district court did not abuse its discretion when it ordered the Government to disclose its list of witnesses where the Government planned to call about 100 witnesses at trial.).

■ In paragraph 2 of his motion, Kabala seeks disclosure of all written statements and all documents which contain the substance of oral statements made by prospective witnesses, including, but not limited to, statements made to the grand jury, statements made to investigators and statements made to the U.S. Attorney. The Government objects to Kabala's motion because the Jencks Act, 18 U.S.C. § 3500, does not require early disclosure of the material which Kabala seeks. We agree and deny Kabala's motion.[1]

In paragraph 4[2] of his motion, Kabala requests information regarding photographic identifications. In response, the Government has stated that, to its knowledge, no photographic identifications were made of Kabala during the investigation of this case. Accordingly, we deny Kabala's motion as moot.

In paragraphs 5 and 6 of his motion, Kabala seeks disclosure of any oral statements made by him on which the Government intends to rely. In response, the Government states that, in accordance with Fed.R.Crim.P. 16(a)(1)(A), it has produced "the substance of ... oral statement[s] which the government intends to offer in evidence at the trial made by the defendant [either] before or after arrest in response to interrogation by any person then known to the defendant to be a government agent." Based upon the Government's representation that it has complied with Fed. R.Crim.P. 16, we deny Kabala's motion as moot.

In paragraph 7 of his motion, Kabala requests the names and addresses of any informants who furnished information to the Government. In response, the Government, without waiving any objection it has to the breadth of Kabala's request, states that no informants provided information to the Government regarding Kabala. Accordingly, we deny Kabala's motion as moot.

## MOTION FOR EVIDENCE AND OTHER MATERIAL FAVORABLE TO THE DEFENSE

In this motion, Kabala seeks an order requiring the Government to disclose exculpatory evidence and evidence which impeaches the testimony of prospective government witnesses. In response, the Government states that it does not object to producing discovery required by the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, and pertinent case law. *See Bourjaily v. United States*, —— U.S. ——, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Esposito*, 523 F.2d 242, 248 (7th Cir. 1975), *cert. denied* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 768 (1976). Accordingly, we deny Kabala's motion as moot.

## MOTION FOR DISCLOSURE OF ELECTRONIC OR OTHER SURVEILLANCE

In this motion, Kabala seeks all documents pertaining to electronic or other surveillance and wire or oral communications which in any way whatsoever concern him. We summarily deny this motion based on the Government's representation that it is unaware of the existence of any of the items requested in Kabala's motion.

---

**1.** To the extent that the Jencks Act, 18 U.S.C. § 3500, requires subsequent disclosure of these materials, the Government, of course, must produce them to Kabala at the appropriate time.

**2.** Kabala's motion does not contain a paragraph 3.

## MOTION REGARDING OTHER CRIMES, WRONGS OR ACTS AS EVIDENCE

In this motion, Kabala seeks disclosure of the Government's intent to introduce evidence of other crimes, wrongs or acts. In response, the Government has enumerated the evidence it may use and has represented that the Government either has produced copies of the evidence or has allowed Kabala's attorney to inspect the evidence. Based upon this representation, we deny Kabala's motion as moot.

## MOTION TO DISMISS AND FOR AN EVIDENTIARY HEARING

In his motion to dismiss, Kabala argues that three theories entitle him to full or partial relief. First, Kabala argues that this Court should dismiss the indictment because the Government manufactured federal jurisdiction. Second, Kabala argues that the Government's conduct during the course of its investigation of him was so outrageous and fundamentally unfair that Kabala was denied due process under the Fifth Amendment of the United States Constitution. Consequently, Kabala argues that this Court should dismiss the indictment against him. Finally, Kabala argues that in this case, the application of 18 U.S.C. § 2252(a)(2), which prohibits the knowing receipt of child pornography which has been shipped or transported in interstate or foreign commerce, violates his constitutional right of privacy.

### 1. *Manufactured Jurisdiction*

■ In his motion to dismiss, Kabala argues that this Court should dismiss the indictment in this case because the Government manufactured federal jurisdiction. Kabala argues that the Government only could establish the essential element of interstate or foreign transportation through its own conduct. Kabala directs our attention to the facts of this case to support this argument.

As part of its undercover operation, government agents created a brochure advertising the sale of child pornography which they sent to Kabala. The brochure directed a response to a post office box maintained by Canadian Customs. Canadian Customs, without inspecting the responses, returned them to U.S. Customs Service in Chicago. Agents for U.S. Customs Service contacted the individuals who responded to their solicitation to arrange a time for delivery of the pornographic contraband. The agents then filled the "order" with material taken from a stock of pornographic material previously seized by government agents, which was maintained in a warehouse in Chicago. Once the "order" was filled, the agent then hand carried the "order" to Canadian Customs in Ontario, Canada. The "order" then was redelivered to the agents for U.S. Customs Service by DHL Courier Service. The government agent then delivered the parcel to Kabala at his residence.

Kabala argues that the government's conduct in this case taints the indictments in violation of *United States v. Archer*, 486 F.2d 670 (2d Cir.1973). In *Archer*, the Second Circuit reversed convictions under the Travel Act, 18 U.S.C. § 1952, because it found that government agents had injected the interstate element of the charged offense thereby triggering federal jurisdiction. Kabala argues that the government agents contrived federal jurisdiction in this case by needlessly routing the pornographic material through foreign commerce.

In response, the Government argues that *Archer* is distinguishable from this case on four grounds. First, the undercover operation in this case was directed at child pornography, a matter of federal concern. Second, the *Archer* rationale does not apply to "situations where the government's investigation [is] based on information [which shows that] the defendant was predisposed to commit the crime." Third, *Archer* is distinguishable where the defendant participates in acts which give rise to federal jurisdiction. Finally, in situations where the government has not conducted itself in an outrageous manner, the *Archer* rationale will not support dismissal.

The Court acknowledges, and Kabala does not dispute, that combatting the problem of child pornography is a substantial

federal interest. *See* 18 U.S.C. § 2252. Accordingly, we need not discuss this point. Kabala does challenge the remaining three grounds which the Government argues distinguish his case from *Archer.* We decline to discuss the third and fourth points because we find that the investigative technique used by the government agents was proper and that the agents did not manufacture federal jurisdiction.

In support of its argument that Kabala's predisposition renders *Archer* inapplicable, the Government calls this Court's attention to *United States v. Podolsky,* 798 F.2d 177 (7th Cir.1986). In *Podolsky,* the Seventh Circuit, affirming the defendant's conviction for conspiracy to commit arson, referred to the *Archer* decision as a case of virtual entrapment. *Id.,* 798 F.2d at 181. The Court, however, did not rest its decision in *Podolsky* on the defendant's prior disposition to commit arson. Instead, the Court distinguished the facts of *Podolsky* from *Archer* by focusing its attention on the conduct of the government agents.

In *Podolsky,* a government informant paid the defendant to burn down a building located at 2436 West Division Street ("2436"). Before the defendant could complete the crime, the Government discovered that federal jurisdiction would be lacking because the building located at 2436 was vacant and was not used in interstate commerce. Consequently, in addition to burning down 2436, the informant asked the defendant to burn down a building located at 2438 West Division ("2438"), which was used in interstate commerce. The defendant agreed to burn down 2438, but did not complete the crime because 2438 appeared occupied. The defendant was arrested attempting to burn down 2436, but he was convicted of conspiring to burn down 2438. *Podolsky,* 798 F.2d at 177–78.

On appeal, the defendant, relying on *Archer,* raised the issue of manufactured jurisdiction. The Seventh Circuit distinguished the *Podolsky* facts from those in *Archer* because the government agents in *Podolsky* did not put 2438 into interstate commerce. The Court specifically noted that the case would be closer to *Archer* if the Government had done something to put a vacant building into interstate commerce. *Id.,* 798 F.2d at 180.

*Podolsky* arguably lends more support to Kabala's position than to the Government's position. In the case before this Court, the Government set up a phony foreign distributor of child pornography ("Produit Outaouais") as part of an undercover operation. Through Produit Outaouais, the Government solicited various individuals, some of whom responded by placing orders. Because Produit Outaouais is a creation of government agents, the case before this Court is factually closer to *Archer* than was *Podolsky.* Despite possible similarities, our decision regarding the motion to dismiss must be based upon more than a superficial analysis of the overlap between the facts of this case and those in *Archer.*

In *Archer,* the Second Circuit was presented with a government undercover operation in which the conduct of the government agents was offensive. The agents lied to the police, to the grand jury, and to judges. Near the close of their investigation, the agents discovered that no federal crimes had been committed. Therefore, the agents unilaterally placed interstate telephone calls which transformed the local corruption into corruption which technically violated the Travel Act. 18 U.S.C. § 1952.

A cursory review of the facts of this case demonstrates that the investigative technique employed by government agents was not offensive. In this case, the government agents tailored their undercover operation so that it would mimic closely the operation of an actual distributor of child pornography.

In its response to the motion to dismiss, the Government attached the affidavit of John O'Malley ("O'Malley"), a Regional Child Pornography Coordinator for U.S. Customs Service. O'Malley has extensive training and experience regarding the investigation of child pornography, pedophilia and child sexual abuse. Based upon this training and experience, O'Malley stated that child pornography is not generally available at retail establishments. Instead,

collectors must obtain it from a foreign, commercial producer or from discrete contact with other collectors. Foreign distributors do not gratuitously send child pornography to U.S. collectors; rather, collectors must prepay the cost of the materials and postage.

Based upon this knowledge, the government agents created Produit Outaouais, a foreign distributor of child pornography. Through Produit Outaouais, the Government contacted suspected pedophiles and collectors of child pornography. The Government specifically solicited Kabala because it had reason to believe he collected child pornography. This suspicion was based on the interception in 1985 of an international mail parcel addressed to Kabala, which contained child pornography.

This recitation of the facts demonstrates that the Government used a proper investigative technique in this case. *See United States v. Kaminski*, 703 F.2d 1004, 1009–10 (7th Cir.1983). The routing of pornographic materials from Chicago to Canada and back to Chicago does not taint the undercover operation. The operation was set up in Canada for a legitimate investigative purpose and not merely to create federal jurisdiction. Accordingly, we deny Kabala's motion to dismiss on the ground of manufactured jurisdiction.

### 2. *Outrageous Government Conduct*

In his motion to dismiss, Kabala argues that this Court should dismiss the indictment because the Government's outrageous conduct during the course of the investigation deprived him of due process under the Fifth Amendment of the United States Constitution. For the reasons stated in the previous section of this opinion, we find that the Government properly conducted this investigation. Accordingly, we deny Kabala's motion to dismiss for violations of his Fifth Amendment right of due process.

### 3. *Right to Privacy*

In his motion to dismiss, Kabala argues that this Court should dismiss count II because count II violates his right to privacy. In support of this argument, Kabala directs this Court's attention to *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In *Stanley*, the Supreme Court recognized that individuals have the right to *possess* obscene material in the privacy of their own home. *Stanley* does not include an implied right to *receive* such material. *See United States v. Miller*, 776 F.2d 978 (11th Cir.1985), *cert. denied* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986); *United States v. Andersson*, 803 F.2d 903, 906–07 (7th Cir. 1986). Count II charges that Kabala "knowingly receive[d] visual depictions that had been transported and shipped in interstate and foreign commerce" in violation of 18 U.S.C. § 2252(a)(2). Count II does not violate Kabala's right to privacy. Accordingly, we deny Kabala's motion to dismiss count II.

### CONCLUSION

For the reasons stated in this opinion, we deny defendant Michael J. Kabala's motion for discovery and inspection pursuant to Fed.R.Crim.P. 16, his motion for favorable material and evidence, his motion for disclosure of electronic or other surveillance, his motion regarding other crimes, wrongs or acts as evidence and his motion to dismiss and for an evidentiary hearing.