**UNITED STATES of America,**

v.

**Patsy BOFFARDI, Defendant.**

**No. 87 Cr. 0765 (GLG).**

United States District Court,
S.D. New York.

May 12, 1988.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, Stuart R. Grabois, Asst. U.S. Atty., of counsel, for the U.S.

David Bernheim, Bronx, N.Y., for defendant.

## OPINION

GOETTEL, District Judge:

The defendant in this case, Patsy Boffardi, is a social worker. (He had been a New York City police officer, but retired after he was disabled in the line of duty.) He has been indicted for violating 18 U.S.C. § 2252(a)(2). That statute makes it a crime knowingly to receive any visual depiction of a minor engaging in sexually explicit conduct, the production of which depiction actually involved the use of a minor engaging in such conduct (hereinafter referred to as "child pornography"). (The jurisdictional element of the statute requires the depiction to have been mailed or to have been transported or shipped in interstate or foreign commerce.) The defendant moves to dismiss the indictment, and to suppress certain statements made by him and certain evidence seized at the time a search warrant was executed.

BACKGROUND

Most of the pertinent facts are not in dispute. The postal inspection service conceived and implemented Project Looking Glass, the object of which was to locate and prosecute consumers of child pornography. The initial targets of the Project were identified from a variety of sources, including

advertisements apparently seeking such material, and customer lists of known distributors. The latter identified Boffardi as a target; his name appeared on a customer list of a known national distributor of child pornography.

From this group, the scope of the investigation was narrowed to include only those targets who responded to test correspondence sent by the Government. In Boffardi's case, the test correspondence was in the form of a questionnaire from an undercover pen-pal organization. His responses to this questionnaire clearly manifest a predisposition to receive child pornography. Boffardi indicated that he liked hardcore heterosexual pornographic materials involving children and young teenagers, and that he believed that the best age for children to have their first sexual experience was between the ages of nine and fifteen. He also indicated that he spends approximately $360.00 each year on pornographic materials, that he collects sexual videos and photographs, and that he usually buys his materials by mail from Europe.[1]

To those who responded to the test correspondence, the government sent a second communication. Boffardi received a solicitation letter from an undercover Hong Kong company, the Far East Trading Company ("FET"). The letter criticized the seizure of child pornography by the Customs Service, and stated that it could circumvent Customs examination of its deliveries by sending its "youthful materials" through its branch office in the U.S. Virgin Islands. The letter concluded by asking the addressee of the letter to send his name and address to the company's Virgin Islands office if he wanted further information.

Following Boffardi's affirmative response to this solicitation letter, the Project sent him a catalog describing various child pornography materials available by mail order. By letter postmarked May 28, 1987, Boffardi ordered five videotapes and four magazines from the catalog. (All of the pornographic materials used by the Project were taken from material earlier seized by the Government from persons engaged in illicit activities.)

Based upon his order, the Project set up a controlled delivery to Boffardi's home of one of the magazines and one of the videotapes.[2] A postal inspector dressed as a letter carrier delivered the materials to the defendant's door, and the defendant paid for them with a personal check in the amount of $104.95. The inspector returned ten minutes later with others, and, after getting the defendant to open the door on a ruse, they entered, announcing that they had a search warrant. (The search warrant had been obtained contingent upon delivery of the control materials.) The inspectors conducted a search and retrieved the delivered materials. They also inquired about the presence of other child pornography, and the defendant turned over to them a number of materials. The warrant did not cover some of these additional materials, but the defendant signed a form stating that he had been advised of his constitutional rights and that he voluntarily waived those rights and authorized the seizure of the materials. The waiver form concluded by stating "I make this authorization freely and voluntarily."

DISCUSSION

I. Selective Prosecution

The defendant's principal argument is that 18 U.S.C. § 2252(a)(2), as applied to him, violates the First and Fourth Amendments to the Constitution. He claims that although a large number of the Project's targets received the controlled deliveries of child pornography in violation of the statute, only those targets who had other child pornography materials in their possession were charged with the crime. Therefore, he alleges, the statute is being adminis-

---

1. Boffardi also indicated on the form that he was divorced. The questionnaire did not inquire about children in the household, but in fact Boffardi has custody of his seven-year-old son.

2. Boffardi attaches significance to the fact that the mailing was done by government agents. However, section 2252(a)(2) is not directed at those who *send* child pornography, but rather at those who knowingly *receive* it. (Section 2252(a)(1) is directed at those who send such materials.)

tered in a fashion that punishes him not for receiving child pornography in violation of the statute, but rather for simply possessing child pornography in his home.[3] It is this result, he argues, which violates the First and Fourth Amendments.

■ In essence, the defendant's argument is one based on selective prosecution. A party alleging selective prosecution must establish a *prima facie* case

> (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as ... the desire to prevent his exercise of constitutional rights.

*United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974). Assuming for purposes of this motion that the first prong of this test has been satisfied,[4] the defendant has nevertheless failed to establish a *prima facie* case of selective prosecution because he has not satisfied the second prong. First of all, the defendant has not satisfied his "heavy burden" of establishing that the prosecution criterion was based on the desire to punish the mere possession in the home of child pornography. Rather, it seems more than likely that the criterion was based simply on procedural considerations. And in any event, the defendant's argument, that the criterion was based on a desire to prevent his exercise of constitutional rights, presumes that the right to possess child pornography in the home is constitutionally protected. It is not at all clear that it is.

#### a. *Procedural Bases for the Criterion*

■ Given the likelihood that the other materials had been mailed or transported in interstate or foreign commerce at some time, their presence in the defendant's home is some evidence of a predisposition to receive such materials in violation of the statute. Hence by narrowing its targets to only those found with other child pornography, the Project avoids problems of allegations of entrapment. This is an important consideration because the Project is a sting operation.

■ In response, the defendant argues that the other child pornography which was found in his home predated the statute,[5] and is therefore no indication of a predisposition to violate the statute. This argument presupposes that proof of a previous course of similar conduct indicates a predisposition only if the prior conduct included legally punishable criminal acts. This is not so. *United States v. Gantzer*, 810 F.2d 349, 352 (2d Cir.1987). Whether a defendant's commission of prior acts is probative of his disposition to commit similar acts in the future does not depend on whether the commission of the prior acts was illegal.[6]

The criterion used by the Project serves another useful legitimate purpose. By prosecuting only those targets who had other child pornography in their home, the Project increases the probability of snaring the most frequent offenders.[7] The criterion thus likely increases the efficiency of the Project's efforts.

---

**3.** The language of the statute does not prohibit the mere possession of child pornography in the home, but only the knowing receipt of child pornography that has been transported in the mails or in interstate or foreign commerce.

**4.** The government acknowledges that the presence of other child pornography was a consideration in selecting those to be prosecuted, but denies that it was the sole criterion. For purposes of this motion, we will assume that it was an essential element of the prosecutorial decision.

**5.** The government does not concede this.

**6.** It is possible that one predisposed to commit an act before it was criminalized might no longer be so inclined after the act was made illegal. But this possibility has no bearing on the case at bar in light of the defendant's admission that at no time (until his arrest) did he know that it was illegal to receive child pornography through the mail.

**7.** This conclusion assumes a likelihood that the other child pornography was obtained in violation of the statute.

### b. *Constitutional Considerations*

Even were we to assume that the government did base its prosecution criterion on a desire to prevent the mere possession in the home of child pornography, it is not clear that that would constitute impermissible selective prosecution. The defendant's argument that it does presupposes that the right to possess child pornography in the home is protected by the First and Fourth Amendments to the Constitution.

 It seems that the First Amendment does not secure such a right. The visual depiction of live performances of sexual conduct by children does not constitute a form of expression protected by the First Amendment.[8] *New York v. Ferber*, 458 U.S. 747, 756–764, 102 S.Ct. 3348, 3354–58, 73 L.Ed.2d 1113 (1982) (concerning a New York statute prohibiting the *distribution* of material depicting sexual performances by children). The absence of a First Amendment interest is apparent from *Ferber*'s analysis of the impact on the First Amendment of laws prohibiting the distribution of child pornography:

> [W]ere the statutes outlawing the employment of children in these films and photographs fully effective, and the constitutionality of these laws has not been questioned, the First Amendment implications would be no greater than that presented by laws against distribution: enforceable production laws would leave no child pornography to be marketed.

*Ferber*, 458 U.S. at 762, 102 S.Ct. at 3357. The same can be said with respect to consumption; were the government fully able to stop the production of child pornography,[9] that would leave none to be consumed, whether in the home or elsewhere. In addition, see *infra* p. 1268 (discussing factors bearing on the question of whether the right to privacy within the home secures a right to possess child pornography in the home).

It is less clear whether the Fourth Amendment secures a right to possess child pornography in the home.[10] There are certainly privacy interests involved in the Fourth Amendment's protection of the home. Indeed it is the only explicit privacy right in the Constitution. Hence in this case it is not necessary to determine the contours of the "penumbra" of privacy rights, which contours seem to shift with the winds of the social interests involved.

 However, the fact that one has a right to privacy within the home does not mean that the government may not prohibit the possession in the home of any printed, filmed, or recorded matter at all. As the Supreme Court has recognized, "compelling reasons may exist for overriding the right of the individual to possess those materials." *Stanley v. Georgia*, 394 U.S. 557, 569 n. 11, 89 S.Ct. 1243, 1249 n. 11, 22 L.Ed.2d 542 (1969) (citing as an example 18 U.S.C. § 793(d), which prohibits the possession of materials which "the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation").[11] The question,

8. However, "descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retain[ ] First Amendment protection." *New York v. Ferber*, 458 U.S. 747, 765, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982).

9. Apparently it is quite difficult to prosecute the producers of child pornography. *See Ferber*, 458 U.S. at 759–60 and n. 11, 102 S.Ct. at 3356 n. 11.

10. We have been referred to no case which directly addresses this issue.

11. In *Stanley*, a decision of the Warren era, the Supreme Court struck down a state law which criminalized the possession in the home of adult pornography. The decision was based primarily on First Amendment grounds, but also on the ground that obscenity did not constitute a sufficient justification for overriding the right to privacy within the home. Subsequent decisions of the Court have refused to expand that holding. For example, in *United States v. Reidel*, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), the Court reached the arguably anomalous conclusion that the right to possess obscene matter in the home did not confer a correlative right to receive or transport it. *Compare Hawaii v. Kam*, 748 P.2d 372, 56 U.S.L.W. 2429 (Haw.1988) (Hawaiian Supreme Court held that the analogous privacy right contained in the state constitution must give rise to a correlative right to obtain pornography "or the underlying privacy right becomes meaningless." Note, however, that in the Hawaiian constitution, privacy rights are set forth with greater specificity

then, is whether a compelling interest exists for preventing the possession in the home of child pornography.

There are several important considerations which bear on this question. Among them is the fact that the production of these materials is not only illegal, it is horrifying. *See Ferber*, 458 U.S. at 758–59 nn. 10 and 11, 102 S.Ct. at 3355–56 nn. 10 and 11 (discussing the nature, severity, and permanence of the injuries to the child models used in the production of child pornography). Moreover, by purchasing these materials, the consumer creates a demand for them and is therefore directly responsible for their production. *See e.g., United States v. Miller*, 776 F.2d 978, 979 (11th Cir.1985) ("Obviously, the industry would disintegrate absent willing buyers, who play a necessary role in any distribution network.");[12] *see also Ferber*, 458 U.S. at 761, 102 S.Ct. at 3356 (finding that the marketing link in the child pornography distribution chain "provide[s] an economic motive for and [is] thus an integral part of the production of such materials"). Another consideration is the competing privacy interest of the child victim. *See Ferber*, 458 U.S. at 759 n. 10, 102 S.Ct. at 3355 n. 10. This list is by no means exclusive. However, we need not go into the matter at great length since the question is not before us, having decided that the Project's prosecution criterion was not based on a desire to prevent the mere possession in the home of these materials.

## II. Validity of the Search Warrant

■ The defendant also makes the argument that the search warrant was improperly obtained. We disagree. The search warrant quite clearly set forth the fact that government agents were going to be delivering the very goods that they would search for and seize. The endorsing magistrate was in no way deceived. Such

anticipatory warrants have been held permissible. *United States v. Hale*, 784 F.2d 1465, 1468 (9th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986). *Contra, United States v. Flippen*, 674 F.Supp. 536, 539–40 (E.D.Va.1987) (rejecting the reasoning in *Hale* ). In the absence of entrapment, controlled deliveries of illicit substances to those who desire having them does not constitute a due process violation. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). In addition to the delivered materials, the warrant also properly authorized seizing other books, magazines, tapes, photographs, etc., which showed deliveries from the sting operation or the pornographer from whose customer lists the defendant's name originally had been obtained.

■ As we indicated above, the postal inspectors seized additional materials not covered by the warrant. However, the defendant signed a form which stated that he consented to the seizure of these materials. The defendant suggests, in a roundabout way, that this consent was obtained as the result of coercion. However, he submits nothing to support this claim, which is in direct contradiction to the signed form. The claim also contradicts his words in the complimentary letter he wrote to the postal inspectors, in which he thanked them for the tact they exhibited when they conducted their search. (They attempted to protect the defendant's young son from overhearing the details of his father's crime.) Moreover, the defendant is a former policeman. As such, he was well aware of his rights and familiar with the criminal justice system. Under these circumstances, we do not believe that the motion papers filed and the allegations made require a hearing on the suppression of the other child pornography seized during the search, and we deny that portion of the motion.

than can be found in the United States Constitution.); *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (New York law that restricted the distribution of contraceptives impermissibly burdened the privacy right to make decisions about family planning because it made contraceptives less accessible).

12. As did the defendant in *Miller*, Boffardi argues that he is not engaged in any commercial way with the distribution of child pornography since he ordered the materials solely for his own use. The *Miller* court rejected this argument as "specious."

## CONCLUSION

For the reasons discussed above, the defendant's motions are denied in all respects.

SO ORDERED.