# OSBORNE *v.* OHIO

No. 88–5986.   Argued December 5, 1989—Decided April 18, 1990

104

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. BLACKMUN, J., filed a concurring opinion, *post*, p. 126. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 126.

*S. Adele Shank* argued the cause for appellant. With her on the briefs were *Randall M. Dana, John Quigley,* and *David Goldberger.*

*Ronald J. O'Brien* argued the cause and filed a brief for appellee.*

JUSTICE WHITE delivered the opinion of the Court.

In order to combat child pornography, Ohio enacted Rev. Code Ann. § 2907.323(A)(3) (Supp. 1989), which provides in pertinent part:

"(A) No person shall do any of the following:

.          .          .          .          .

"(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:

"(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.

"(b) The person knows that the parents, guardian, or custodian has consented in writing to the photograph-

---

*Briefs of *amici curiae* urging affirmance were filed for the Attorneys General for the State of Arizona et al. by *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *Andrew I. Sutter*, Assistant Attorney General, and *Loren L. Braverman*, and by the Attorneys General for their respective States as follows: *Robert K. Corbin* of Arizona, *Robert A. Butterworth* of Florida, *James T. Jones* of Idaho, *Linley E. Pearson* of Indiana, *Thomas J. Miller* of Iowa, *Robert T. Stephan* of Kansas, *James M. Shannon* of Massachusetts, *Frank J. Kelley* of Michigan, *William L. Webster* of Missouri, *Brian McKay* of Nevada, *Roger A. Tellinghuisen* of South Dakota, and *Kenneth O. Eikenberry* of Washington; for the American Family Association, Inc., by Peggy M. Coleman; for the Children's Legal Foundation by *Alan E. Sears;* for Concerned Women for America et al. by *H. Robert Showers, Wendell R. Bird, Jordan W. Lorence,* and *Cimron Campbell;* and for Covenant House et al. by *Gregory A. Loken* and *Judith Drazen Schretter.*

ing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."

Petitioner, Clyde Osborne, was convicted of violating this statute and sentenced to six months in prison, after the Columbus, Ohio, police, pursuant to a valid search, found four photographs in Osborne's home. Each photograph depicts a nude male adolescent posed in a sexually explicit position.[1]

The Ohio Supreme Court affirmed Osborne's conviction, after an intermediate appellate court did the same. *State* v. *Young*, 37 Ohio St. 3d 249, 525 N. E. 2d 1363 (1988). Relying on one of its earlier decisions, the court first rejected Osborne's contention that the First Amendment prohibits the States from proscribing the private possession of child pornography.

Next, the court found that § 2907.323(A)(3) is not unconstitutionally overbroad. In so doing, the court, relying on the statutory exceptions, read § 2907.323(A)(3) as only applying to depictions of nudity involving a lewd exhibition or graphic focus on a minor's genitals. The court also found that scienter is an essential element of a § 2907.323(A)(3) offense. Osborne objected that the trial judge had not insisted that the government prove lewd exhibition and scienter as elements of his crime. The Ohio Supreme Court rejected these contentions because Osborne had failed to object to the

---

[1] Osborne contends that the subject in all of the pictures is the same boy; Osborne testified at trial that he was told that the youth was 14 at the time that the photographs were taken. App. 16. The government maintains that three of the pictures are of one boy and one of the pictures is of another. Three photographs depict the same boy in different positions: sitting with his legs over his head and his anus exposed; lying down with an erect penis and with an electrical object in his hand; and lying down with a plastic object which appears to be inserted in his anus. The fourth photograph depicts a nude standing boy; it is unclear whether this subject is the same boy photographed in the other pictures because the photograph only depicts the boy's torso.

jury instructions given at his trial and the court did not believe that the failures of proof amounted to plain error.[2]

The Ohio Supreme Court denied a motion for rehearing, and granted a stay pending appeal to this Court. We noted probable jurisdiction last June. 492 U. S. 904.

## I

The threshold question in this case is whether Ohio may constitutionally proscribe the possession and viewing of child pornography or whether, as Osborne argues, our decision in *Stanley* v. *Georgia*, 394 U. S. 557 (1969), compels the contrary result. In *Stanley*, we struck down a Georgia law outlawing the private possession of obscene material. We recognized that the statute impinged upon Stanley's right to receive information in the privacy of his home, and we found Georgia's justifications for its law inadequate. *Id.*, at 564–568.[3]

*Stanley* should not be read too broadly. We have previously noted that *Stanley* was a narrow holding, see *United States* v. *12 200-ft. Reels of Film*, 413 U. S. 123, 127 (1973), and, since the decision in that case, the value of permitting child pornography has been characterized as "exceedingly modest, if not *de minimis.*" *New York* v. *Ferber*, 458 U. S. 747, 762 (1982). But assuming, for the sake of argument, that Osborne has a First Amendment interest in viewing and possessing child pornography, we nonetheless find this case distinct from *Stanley* because the interests underlying child pornography prohibitions far exceed the interests justifying the Georgia law at issue in *Stanley*. Every court to address the issue has so concluded. See, *e. g., People* v. *Geever*, 122 Ill. 2d 313, 327–328, 522 N. E. 2d 1200, 1206–1207 (1988);

---

[2] Osborne also unsuccessfully raised a number of other challenges that are not at issue before this Court.

[3] We have since indicated that our decision in *Stanley* was "firmly grounded in the First Amendment." *Bowers* v. *Hardwick*, 478 U. S. 186, 195 (1986).

*Felton* v. *State,* 526 So. 2d 635, 637 (Ala. Ct. Crim. App.), aff'd *sub nom. Ex parte Felton,* 526 So. 2d 638, 641 (Ala. 1988); *State* v. *Davis,* 53 Wash. App. 502, 505, 768 P. 2d 499, 501 (1989); *Savery* v. *State,* 767 S. W. 2d 242, 245 (Tex. App. 1989); *United States* v. *Boffardi,* 684 F. Supp. 1263, 1267 (SDNY 1988).

In *Stanley,* Georgia primarily sought to proscribe the private possession of obscenity because it was concerned that obscenity would poison the minds of its viewers. 394 U. S., at 565.[4] We responded that "[w]hatever the power of the state to control public dissemination of ideas inimical to the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts." *Id.,* at 566. The difference here is obvious: The State does not rely on a paternalistic interest in regulating Osborne's mind. Rather, Ohio has enacted § 2907.323(A)(3) in order to protect the victims of child pornography; it hopes to destroy a market for the exploitative use of children.

"It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' . . . The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. That judgment, we think, easily passes muster under the First Amendment." *Ferber,* 458 U. S., at 756–758 (citations omitted). It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the prod-

---

[4] Georgia also argued that its ban on possession was a necessary complement to its ban on distribution (see discussion *infra,* at 110) and that the possession law benefited the public because, according to the State, exposure to obscene material might lead to deviant sexual behavior or crimes of sexual violence. 394 U. S., at 566. We found a lack of empirical evidence supporting the latter claim and stated that " '[a]mong free men, the deterrents ordinarily to be applied to prevent crime are education and punishment for violations of the law . . . .'" *Id.,* at 566–567 (citation omitted).

uct, thereby decreasing demand. In *Ferber*, where we upheld a New York statute outlawing the distribution of child pornography, we found a similar argument persuasive: "The advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation. 'It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.'" *Id.*, at 761–762, quoting *Giboney* v. *Empire Storage & Ice Co.*, 336 U. S. 490, 498 (1949).

Osborne contends that the State should use other measures, besides penalizing possession, to dry up the child pornography market. Osborne points out that in *Stanley* we rejected Georgia's argument that its prohibition on obscenity possession was a necessary incident to its proscription on obscenity distribution. 394 U. S., at 567–568. This holding, however, must be viewed in light of the weak interests asserted by the State in that case. *Stanley* itself emphasized that we did not "mean to express any opinion on statutes making criminal possession of other types of printed, filmed, or recorded materials . . . . In such cases, compelling reasons may exist for overriding the right of the individual to possess those materials." *Id.*, at 568, n. 11.[5]

Given the importance of the State's interest in protecting the victims of child pornography, we cannot fault ·Ohio for attempting to stamp out this vice at all levels in the distribution chain. According to the State, since the time of our decision in *Ferber*, much of the child pornography market has been driven underground; as a result, it is now difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution. Indeed, 19 States

---

[5] As the dissent notes, see *post*, at 141, n. 16, the *Stanley* Court cited illicit possession of defense information as an example of the type of offense for which compelling state interests might justify a ban on possession. *Stanley*, however, did not suggest that this crime exhausted the entire category of proscribable offenses.

have found it necessary to proscribe the possession of this material.[6]

Other interests also support the Ohio law. First, as *Ferber* recognized, the materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come. 458 U. S., at 759. The State's ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.[7]

Given the gravity of the State's interests in this context, we find that Ohio may constitutionally proscribe the possession and viewing of child pornography.

## II

Osborne next argues that even if the State may constitutionally ban the possession of child pornography, his convic-

---

[6] Ala. Code § 13A–12–192 (1988); Ariz. Rev. Stat. Ann. § 13–3553 (1989); Colo. Rev. Stat. § 18–6–403 (Supp. 1989); Fla. Stat. § 827.071 (1989); Ga. Code Ann. § 16–12–100 (1989); Idaho Code § 18–1507 (1987); Ill. Rev. Stat., ch. 38, ¶ 11–20–.1 (1987); Kans. Stat. Ann. § 21–3516 (Supp. 1989); Minn. Stat. § 617.247 (1988); Mo. Rev. Stat. § 573.037 (Supp. 1989); Neb. Rev. Stat. § 28–809 (1989); Nev. Rev. Stat. § 200.730 (1987); Ohio Rev. Code Ann. §§ 2907.322 and 2907.323 (Supp. 1989); Okla. Stat., Tit. 21, § 1021.2 (Supp. 1989); S. D. Codified Laws Ann. §§ 22–22–23, 22–22–23.1 (1988); Tex. Penal Code Ann. § 43.26 (1989 and Supp. 1989–1990); Utah Code Ann. § 76–5a–3(1)(a) (Supp. 1989); Wash. Rev. Code § 9.68A.070 (1989); W. Va. Code § 61–8C–3 (1989).

[7] The Attorney General's Commission on Pornography, for example, states: "Child pornography is often used as part of a method of seducing child victims. A child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by viewing other children having 'fun' participating in the activity." 1 Attorney General's Commission on Pornography, Final Report 649 (1986) (footnotes omitted). See also, D. Campagna and D. Poffenberger, Sexual Trafficking in Children 118 (1988); S. O'Brien, Child Pornography 89 (1983).

tion is invalid because § 2907.323(A)(3) is unconstitutionally overbroad in that it criminalizes an intolerable range of constitutionally protected conduct.[8] In our previous decisions discussing the First Amendment overbreadth doctrine, we have repeatedly emphasized that where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick* v. *Oklahoma*, 413 U. S. 601, 615 (1973). Even where a statute at its margins infringes on protected expression, "facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .'" *New York* v. *Ferber*, 458 U. S., at 770, n. 25.

The Ohio statute, on its face, purports to prohibit the possession of "nude" photographs of minors. We have stated that depictions of nudity, without more, constitute protected expression. See *Ferber, supra,* at 765, n. 18. Relying on this observation, Osborne argues that the statute as written is substantially overbroad. We are skeptical of this claim because, in light of the statute's exemptions and "proper purposes" provisions, the statute may not be substantially overbroad under our cases.[9] However that may be, Os-

---

[8] In the First Amendment context, we permit defendants to challenge statutes on overbreadth grounds, regardless of whether the individual defendant's conduct is constitutionally protected. "The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Massachusetts* v. *Oakes*, 491 U. S. 576, 581 (1989).

[9] The statute applies only where an individual possesses or views the depiction of a minor "who is not the person's child or ward." The State, moreover, does not impose criminal liability if either "[t]he material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other

borne's overbreadth challenge, in any event, fails because the statute, as construed by the Ohio Supreme Court on Osborne's direct appeal, plainly survives overbreadth scrutiny. Under the Ohio Supreme Court reading, the statute prohibits "the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor the ward of the person charged." 37 Ohio St. 3d, at 252, 525 N. E. 2d, at 1368.[10] By limiting the statute's operation in

proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance," or "[t]he person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred." It is true that, despite the statutory exceptions, one might imagine circumstances in which the statute, by its terms, criminalizes constitutionally protected conduct. If, for example, a parent gave a family friend a picture of the parent's infant taken while the infant was unclothed, the statute would apply. But, given the broad statutory exceptions and the prevalence of child pornography, it is far from clear that the instances where the statute applies to constitutionally protected conduct are significant enough to warrant a finding that the statute is overbroad. Cf. Oakes, supra, at 589–590 (opinion of SCALIA, J., joined by BLACKMUN, J., concurring in judgment in part and dissenting in part).

Nor do we find very persuasive Osborne's contention that the statute is unconstitutionally overbroad because it applies in instances where viewers or possessors lack scienter. Although § 2907.323(A)(3) does not specify a mental state, Ohio law provides that recklessness is the appropriate *mens rea* where a statute "neither specifies culpability nor plainly indicates a purpose to impose strict liability." Ohio Rev. Stat. Ann. § 2901.21(B) (1987).

We also do not find any merit to Osborne's claim that § 2907.323(A)(3) is unconstitutionally vague because it does not define the term "minor." Under Ohio law, a minor is anyone under 18 years of age. Ohio Rev. Code Ann. § 3109.01 (1989).

[10] The Ohio court reached this conclusion because "when the 'proper purposes' exceptions set forth in R. C. 2907.323(A)(3)(a) and (b) are considered, the scope of the prohibited conduct narrows significantly. The clear

this manner, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children. We have upheld similar language against overbreadth challenges in the past. In *Ferber*, we affirmed a conviction under a New York statute that made it a crime to promote the "'lewd exhibition of [a child's] genitals.'" 458 U. S., at 751. We noted that "[t]he term 'lewd exhibition of the genitals' is not unknown in this area and, indeed, was given in *Miller* [v. *California*, 413 U. S. 15 (1973),] as an example of a permissible regulation." *Id.*, at 765.[11]

---

purpose of these exceptions . . . is to sanction the possession or viewing of material depicting nude minors where that conduct is morally innocent. Thus, the only conduct prohibited by the statute is conduct which is *not* morally innocent, i. e., the possession or viewing of the described material for prurient purposes. So construed, the statute's proscription is not so broad as to outlaw all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography." 37 Ohio St. 3d, at 251–252, 525 N. E. 2d, at 1367–1368 (emphasis in original).

[11] The statute upheld against an overbreadth challenge in *Ferber* was, moreover, arguably less narrowly tailored than the statute challenged in this case because, unlike § 2907.323(A)(3), the New York law did not provide a broad range of exceptions to the general prohibition on lewd exhibition of the genitals. Despite this lack of exceptions, we upheld the New York law, reasoning that "[h]ow often, if ever, it may be necessary to employ children to engage in conduct clearly within the reach of [the statute] in order to produce educational, medical, or artistic works cannot be known with certainty. Yet we seriously doubt, and it has not been suggested, that these arguably impermissible applications of the statute amount to more than a tiny fraction of the materials within the statute's reach." 458 U. S., at 773.

The dissent distinguishes the Ohio statute, as construed, from the statute upheld in *Ferber* on the ground that the Ohio statute proscribes "'lewd exhibitions of *nudity*' rather than 'lewd exhibitions of *the genitals.*'" See *post*, at 129 (emphasis in original). The dissent notes that Ohio defines nudity to include depictions of pubic areas, buttocks, the female breast, and covered male genitals "in a discernibly turgid state." *Post*, at 130. We do not agree that this distinction between body areas and specific body parts is constitutionally significant: The crucial question is whether the depiction is lewd, not whether the depiction happens to focus on the genitals or the buttocks. In any event, however, Osborne would not be entitled to

The Ohio Supreme Court also concluded that the State had to establish scienter in order to prove a violation of § 2907.323 (A)(3) based on the Ohio default statute specifying that recklessness applies when another statutory provision lacks an intent specification. See n. 9, *supra*. The statute on its face lacks a *mens rea* requirement, but that omission brings into play and is cured by another law that plainly satisfies the requirement laid down in *Ferber* that prohibitions on child pornography include some element of scienter. 458 U. S., at 765.

Osborne contends that it was impermissible for the Ohio Supreme Court to apply its construction of § 2907.323(A)(3) to him—*i. e.*, to rely on the narrowed construction of the statute when evaluating his overbreadth claim. Our cases, however, have long held that a statute as construed "may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendan[t]." *Dombrowski* v. *Pfister*, 380 U. S. 479, 491, n. 7 (1965) (citations omitted).[12] In *Hamling* v. *United States*,

---

relief. The context of the opinion indicates that the Ohio Supreme Court believed that "the term 'nudity' as used in R. C. 2907.323(A)(3) refers to a lewd exhibition of the genitals." *State* v. *Young*, 37 Ohio St. 3d 249, 258, 525 N. E. 2d 1363, 1373 (1988).

We do not concede, as the dissent suggests, see *post*, at 131, n. 5, that the statute as construed might proscribe a family friend's possession of an innocuous picture of an unclothed infant. We acknowledge (see n. 9, *supra*) that the statute as written might reach such conduct, but as construed the statute would surely not apply because the photograph would not involve a "lewd exhibition or graphic focus on the genitals" of the child.

[12] This principle, of course, accords with the rationale underlying overbreadth challenges. We normally do not allow a defendant to challenge a law as it is applied to others. In the First Amendment context, however, we have said that "[b]ecause of the sensitive nature of constitutionally protected expression, we have not required that all those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser." *Dombrowski*, 380 U. S., at 486. But once a statute is authoritatively construed, there is no longer any danger that pro-

418 U. S. 87 (1974), for example, we reviewed the petitioners' convictions for mailing and conspiring to mail an obscene advertising brochure under 18 U. S. C. § 1461. That statute makes it a crime to mail an "obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance." In *Hamling*, for the first time, we construed the term "obscenity" as used in § 1461 "to be limited to the sort of 'patently offensive representations or depictions of that specific "hard core" sexual conduct given as examples in *Miller* v. *California*.'" In light of this construction, we rejected the petitioners' facial challenge to the statute as written, and we affirmed the petitioners' convictions under the section after finding that the petitioners had fair notice that their conduct was criminal. 418 U. S., at 114–116.

Like the *Hamling* petitioners, Osborne had notice that his conduct was proscribed. It is obvious from the face of § 2907.323(A)(3) that the goal of the statute is to eradicate child pornography. The provision criminalizes the viewing and possessing of material depicting children in a state of nudity for other than "proper purposes." The provision appears in the "Sex Offenses" chapter of the Ohio Code. Section 2907.323 is preceded by § 2907.322, which proscribes "[p]andering sexually oriented matter involving a minor," and followed by § 2907.33, which proscribes "[d]eception to obtain matter harmful to juveniles." That Osborne's photographs of adolescent boys in sexually explicit situations constitute child pornography hardly needs elaboration. Therefore, although § 2907.323(A)(3) as written may have been imprecise at its fringes, someone in Osborne's position would not be surprised to learn that his possession of the four photographs at issue in this case constituted a crime.

Because Osborne had notice that his conduct was criminal, his case differs from three cases upon which he relies: *Bouie* v. *City of Columbia*, 378 U. S. 347 (1964), *Rabe* v. *Washing-*

tected speech will be deterred and therefore no longer any reason to entertain the defendant's challenge to the statute on its face.

*ton*, 405 U. S. 313 (1972), and *Marks* v. *United States*, 430 U. S. 188 (1977). In *Bouie*, the petitioners had refused to leave a restaurant after being asked to do so by the restaurant's manager. Although the manager had not objected when the petitioners entered the restaurant, the petitioners were convicted of violating a South Carolina trespass statute proscribing "'entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry.'" 378 U. S., at 349. Affirming the convictions, the South Carolina Supreme Court construed the trespass law as also making it a crime for an individual to remain on another's land after being asked to leave. We reversed the convictions on due process grounds because the South Carolina Supreme Court's expansion of the statute was unforseeable and therefore the petitioners had no reason to suspect that their conduct was criminal. *Id.*, at 350–352.

Likewise, in *Rabe* v. *Washington, supra*, the petitioner had been convicted of violating a Washington obscenity statute that, by its terms, did not proscribe the defendant's conduct. On the petitioner's appeal, the Washington Supreme Court nevertheless affirmed the petitioner's conviction, after construing the Washington obscenity statute to reach the petitioner. We overturned the conviction because the Washington Supreme Court's broadening of the statute was unexpected; therefore the petitioner had no warning that his actions were proscribed. *Id.*, at 315.

And, in *Marks* v. *United States, supra*, we held that the retroactive application of the obscenity standards announced in *Miller* v. *California*, 413 U. S. 15 (1973), to the potential detriment of the defendant violated the Due Process Clause because, at the time that the defendant committed the challenged conduct, our decision in *Memoirs* v. *Attorney General of Massachusetts*, 383 U. S. 413 (1966), provided the governing law. The defendant could not suspect that his actions would later become criminal when we expanded the range of constitutionally proscribable conduct in *Miller*.

Osborne suggests that our decision here is inconsistent with *Shuttlesworth* v. *Birmingham*, 382 U. S. 87 (1965). We disagree. In *Shuttlesworth*, the defendant had been convicted of violating an Alabama ordinance that, when read literally, provided that "a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city." *Id.*, at 90. We stated that "[t]he constitutional vice of so broad a provision needs no demonstration." *Ibid.* As subsequently construed by the Alabama Supreme Court, however, the ordinance merely made it criminal for an individual who was blocking free passage along a public street to disobey a police officer's order to move. We noted that "[i]t is our duty, of course, to accept this state judicial construction of the ordinance. . . . As so construed, we cannot say that the ordinance is unconstitutional, though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied." *Id.*, at 91. We nevertheless reversed the defendant's conviction because it was not clear that the State had convicted the defendant under the ordinance as construed rather than as written. *Id.*, at 91–92.[13] *Shuttlesworth*, then, stands for the proposition that where a State Supreme Court narrows an unconstitutionally overbroad statute, the State must ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally written; this proposition in no way conflicts with our holding in this case.

Finally, despite Osborne's contention to the contrary, we do not believe that *Massachusetts* v. *Oakes*, 491 U. S. 576 (1989), supports his theory of this case. In *Oakes*, the petitioner challenged a Massachusetts pornography statute as

---

[13] In *Shuttlesworth*, we also overturned the defendant's conviction for violating another part of the same Alabama ordinance because that provision had been interpreted as criminalizing an individual's failure to follow a policeman's directions when the policeman was directing traffic, and the crime alleged in *Shuttlesworth* had nothing to do with motor traffic. 382 U. S., at 93–95.

overbroad; since the time of the defendant's alleged crime, however, the State had substantially narrowed the statute through a subsequent legislative enactment—an amendment to the statute. In a separate opinion, five Justices agreed that the state legislature could not cure the potential overbreadth problem through the subsequent legislative action; the statute was void as written. *Id.*, at 585–586.

Osborne contends that *Oakes* stands for a similar but distinct proposition that, when faced with a potentially overinclusive statute, a court may not construe the statute to avoid overbreadth problems and then apply the statute, as construed, to past conduct. The implication of this argument is that if a statute is overbroad as written, then the statute is void and incurable. As a result, when reviewing a conviction under a potentially overbroad statute, a court must either affirm or strike down the statute on its face, but the court may not, as the Ohio Supreme Court did in this case, narrow the statute, affirm on the basis of the narrowing construction, and leave the statute in full force. We disagree.

First, as indicated by our earlier discussion, if we accepted this proposition, it would require a radical reworking of our law. Courts routinely construe statutes so as to avoid the statutes' potentially overbroad reach, apply the statute in that case, and leave the statute in place. In *Roth* v. *United States*, 354 U. S. 476 (1957), for example, the Court construed the open-ended terms used in 18 U. S. C. § 1461, which prohibits the mailing of material that is "obscene, lewd, lascivious, indecent, filthy or vile." Justice Harlan characterized *Roth* in this way:

> "The words of § 1461, 'obscene, lewd, lascivious, indecent, filthy or vile,' connote something that is portrayed in a manner so offensive as to make it unacceptable under current community *mores*. While in common usage the words have different shades of meaning, the statute since its inception has always been taken as aimed at obnoxiously debasing portrayals of sex. Although the

statute condemns such material irrespective of the *effect* it may have upon those into whose hands it falls, the early case of *United States* v. *Bennet*, 24 Fed. Cas. 1093 (No. 14571), put a limiting gloss upon the statutory language: the statute reaches only indecent material which, as now expressed in *Roth* v. *United States, supra,* at 489, 'taken as a whole appeals to prurient interest.'" *Manuel Enterprises, Inc.* v. *Day*, 370 U. S. 478, 482–484 (1962) (footnotes omitted; emphasis in original).

See also, *Hamling*, 418 U. S., at 112 (quoting the above). The petitioner's conviction was affirmed in *Roth*, and federal obscenity law was left in force. 354 U. S., at 494.[14] We, moreover, have long respected the State Supreme Courts' ability to narrow state statutes so as to limit the statute's scope to unprotected conduct. See, *e. g., Ginsberg* v. *New York*, 390 U. S. 629 (1968).

Second, we do not believe that *Oakes* compels the proposition that Osborne urges us to accept. In *Oakes*, JUSTICE SCALIA, writing for himself and four others, reasoned:

"The overbreadth doctrine serves to protect constitutionally legitimate speech not merely *ex post,* that is, after the offending statute is enacted, but also *ex ante,* that is, when the legislature is contemplating what sort of statute to enact. If the promulgation of overbroad laws affecting speech was cost free . . . that is, if *no* conviction of constitutionally proscribable conduct would be

---

[14] *Buckley* v. *Valeo*, 424 U. S. 1, 76–80 (1976), is another landmark case where a law was construed to avoid potential overbreadth problems and left in place. Section 304(e) of the Federal Election Campaign Act, 2 U. S. C. § 434(e) (1976 ed.), imposed certain reporting requirements on "[e]very person . . . who makes contributions or independent expenditures" exceeding $100 "other than by contribution to a political committee or candidate." We stated that "[t]o insure that the reach of § 434(e) is not impermissibly broad, we construe 'expenditure' for purposes of that section . . . to reach only funds used for communications that expressly advocate the election or defeat of a clearly identified candidate." The section was upheld as construed. 424 U. S., at 80 (footnote omitted).

lost, so long as the offending statute was narrowed before the final appeal . . . then legislatures would have significantly reduced incentive to stay within constitutional bounds in the first place. When one takes account of those overbroad statutes that are never challenged, and of the time that elapses before the ones that are challenged are amended to come within constitutional bounds, a substantial amount of legitimate speech would be 'chilled' . . . ." 491 U. S., at 586 (emphasis in original).

In other words, five of the *Oakes* Justices feared that if we allowed a legislature to correct its mistakes without paying for them (beyond the inconvenience of passing a new law), we would decrease the legislature's incentive to draft a narrowly tailored law in the first place.

Legislators who know they can cure their own mistakes by amendment without significant cost may not be as careful to avoid drafting overbroad statutes as they might otherwise be. But a similar effect will not be likely if a judicial construction of a statute to eliminate overbreadth is allowed to be applied in the case before the court. This is so primarily because the legislatures cannot be sure that the statute, when examined by a court, will be saved by a narrowing construction rather than invalidated for overbreadth. In the latter event, there could be no convictions under that law even of those whose own conduct is unprotected by the First Amendment. Even if construed to obviate overbreadth, applying the statute to pending cases might be barred by the Due Process Clause. Thus, careless drafting cannot be considered to be cost free based on the power of the courts to eliminate overbreadth by statutory construction.

There are also other considerations. Osborne contends that when courts construe statutes so as to eliminate overbreadth, convictions of those found guilty of unprotected conduct covered by the statute must be reversed and any fur-

ther convictions for prior reprehensible conduct are barred.[15] Furthermore, because he contends that overbroad laws implicating First Amendment interests are nullities and incapable of valid application from the outset, this would mean that judicial construction could not save the statute even as applied to subsequent conduct unprotected by the First Amendment. The overbreadth doctrine, as we have recognized, is indeed "strong medicine," *Broadrick* v. *Oklahoma,* 413 U. S., at 613, and requiring that statutes be facially invalidated whenever overbreadth is perceived would very likely invite reconsideration or redefinition of the doctrine in a way that would not serve First Amendment interests.[16]

## III

Having rejected Osborne's *Stanley* and overbreadth arguments, we now reach Osborne's final objection to his conviction: his contention that he was denied due process because it is unclear that his conviction was based on a finding that each of the elements of § 2907.323(A)(3) was present.[17] According

[15] Under Osborne's submission, even where the construction eliminating overbreadth occurs in a civil case, the statute could not be applied to conduct occurring prior to the decision; for although plainly within reach of the terms of the statute and plainly not otherwise protected by the First Amendment, until the statute was narrowed to comply with the Amendment, the conduct was not illegal.

[16] In terms of applying a ruling to pending cases, we see no difference of constitutional import between a court affirming a conviction after construing a statute to avoid facial invalidation on the ground of overbreadth, and affirming a conviction after rejecting a claim that the conduct at issue is not within the terms of the statute. In both situations, the Due Process Clause would require fair warning to the defendant that the statutory proscription, as construed, covers his conduct. But even with the due process limitation, courts repeatedly affirm convictions after rejecting nonfrivolous claims that the conduct at issue is not forbidden by the terms of the statute. As argued earlier, there is no doubt whatsoever that Osborne's conduct is proscribed by the terms of the child pornography statute involved here.

[17] "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to con-

to the Ohio Supreme Court, in order to secure a conviction under § 2907.323(A)(3), the State must prove both scienter and that the defendant possessed material depicting a lewd exhibition or a graphic focus on genitals. The jury in this case was not instructed that it could convict Osborne only for conduct that satisfied these requirements.

The State concedes the omissions in the jury instructions, but argues that Osborne waived his right to assert this due process challenge because he failed to object when the instructions were given at his trial. The Ohio Supreme Court so held, citing Ohio law. The question before us now, therefore, is whether we are precluded from reaching Osborne's due process challenge because counsel's failure to comply with the procedural rule constitutes an independent state-law ground adequate to support the result below. We have no difficulty agreeing with the State that Osborne's counsel's failure to urge that the court instruct the jury on scienter constitutes an independent and adequate state-law ground preventing us from reaching Osborne's due process contention on that point. Ohio law states that proof of scienter is required in instances, like the present one, where a criminal statute does not specify the applicable mental state. See n. 9, *supra*. The state procedural rule, moreover, serves the State's important interest in ensuring that counsel do their part in preventing trial courts from providing juries with erroneous instructions.

With respect to the trial court's failure to instruct on lewdness, however, we reach a different conclusion: Based upon our review of the record, we believe that counsel's failure to object on this point does not prevent us from considering Osborne's constitutional claim. Osborne's trial was brief: The State called only the two arresting officers to the stand; the defense summoned only Osborne himself. Right before trial, Osborne's counsel moved to dismiss the case, contending

stitute the crime with which he is charged." *In re Winship*, 397 U. S. 358, 364 (1970).

that § 2907.323(A)(3) is unconstitutionally overbroad.  Counsel stated:

> "I'm filing a motion to dismiss based on the fact that [the] statute is void for vagueness, overbroad . . . The statute's overbroad because . . . a person couldn't have pictures of his own grandchildren; probably couldn't even have nude photographs of himself.
>
> "Judge, if you had some nude photos of yourself when you were a child, you would probably be violating the law . . . .
>
> .     .     .     .     .
>
> "So grandparents, neighbors, or other people who happen to view the photograph are criminally liable under the statute.  And on that basis I'm going to ask the Court to dismiss the case."  Tr. 3–4.

The prosecutor informed the trial judge that a number of Ohio state courts had recently rejected identical motions challenging § 2907.323(A)(3).  Tr. 5–6.  The court then overruled the motion.  *Id.*, at 7.  Immediately thereafter, Osborne's counsel proposed various jury instructions.  *Ibid.*

Given this sequence of events, we believe that we may reach Osborne's due process claim because we are convinced that Osborne's attorney pressed the issue of the State's failure of proof on lewdness before the trial court and, under the circumstances, nothing would be gained by requiring Osborne's lawyer to object a second time, specifically to the jury instructions.  The trial judge, in no uncertain terms, rejected counsel's argument that the statute as written was overbroad.  The State contends that counsel should then have insisted that the court instruct the jury on lewdness because, absent a finding that this element existed, a conviction would be unconstitutional.  Were we to accept this position, we would "'force resort to an arid ritual of meaningless form,' . . . and would further no perceivable state interest." *James* v. *Kentucky*, 466 U. S. 341, 349 (1984), quoting *Staub* v. *City of Baxley*, 355 U. S. 313, 320 (1958), and citing *Henry*

v. *Mississippi*, 379 U. S. 443, 448–449 (1965).   As Justice Holmes warned us years ago, "[w]hatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis* v. *Wechsler*, 263 U. S. 22, 24 (1923).

Our decision here is analogous to our decision in *Douglas* v. *Alabama*, 380 U. S. 415 (1965).   In that case, the Alabama Supreme Court had held that a defendant had waived his Confrontation Clause objection to the reading into evidence of a confession that he had given.   Although not following the precise procedure required by Alabama law,[18] the defendant had unsuccessfully objected to the prosecution's use of the confession.   We followed "our consistent holdings that the adequacy of state procedural bars to the assertion of federal questions is itself a federal question" and stated that "[i]n determining the sufficiency of objections we have applied the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review here." *Id.*, at 422.   Concluding that "[n]o legitimate state interest would have been served by requiring repetition of a patently futile objection," we held that the Alabama procedural ruling did not preclude our consideration of the defendant's constitutional claim.   *Id.*, at 421–422.   We reach a similar conclusion in this case.

## IV

To conclude, although we find Osborne's First Amendment arguments unpersuasive, we reverse his conviction and re-

---

[18] The Alabama court had stated: " 'There must be a ruling sought and acted on before the trial judge can be put in error.   Here there was no ruling asked or invoked as to the questions embracing the alleged confession.' "   380 U. S., at 421 (citation omitted).

mand for a new trial in order to ensure that Osborne's conviction stemmed from a finding that the State had proved each of the elements of § 2907.323(A)(3).

*So ordered.*

JUSTICE BLACKMUN, concurring.

I join the Court's opinion. I write separately only to express my agreement with JUSTICE BRENNAN, see *post*, at 146, n. 20, that this Court's ability to entertain Osborne's due process claim premised on the failure of the trial court to charge the "lewd exhibition" and "graphic focus" elements does not depend upon his objection to this failure at trial.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, dissenting.

I agree with the Court that appellant's conviction must be reversed. I do not agree, however, that Ohio is free on remand to retry him under Ohio Rev. Code Ann. §2907.323(A)(3) (Supp. 1989) as it currently exists. In my view, the state law, even as construed authoritatively by the Ohio Supreme Court, is still fatally overbroad, and our decision in *Stanley* v. *Georgia*, 394 U. S. 557 (1969), prevents the State from criminalizing appellant's possession of the photographs at issue in this case. I therefore respectfully dissent.

I

A

As written, the Ohio statute is plainly overbroad. Section 2907.323(A)(3) makes it a crime to "[p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity." Another section defines "nudity" as

> "the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full opaque covering of any portion thereof

below the top of the nipple, or of covered male genitals in a discernibly turgid state." § 2907.01(H).

In short, §§2907.323 and 2907.01(H) use simple nudity, without more, as a way of defining child pornography.[1] But as our prior decisions have made clear, " 'nudity alone' does not place otherwise protected material outside the mantle of the First Amendment." *Schad* v. *Mount Ephraim*, 452 U. S. 61, 66 (1981) (quoting *Jenkins* v. *Georgia*, 418 U. S. 153, 161 (1974)); see also *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 224 (1990) (plurality opinion); *id.*, at 238, n. 1 (BRENNAN, J., concurring in judgment); *Doran* v. *Salem Inn, Inc.*, 422 U. S. 922, 932–933 (1975); *Southeastern Promotions, Ltd.* v. *Conrad*, 420 U. S. 546, 557–558 (1975); *California* v. *LaRue*, 409 U. S. 109, 118 (1972). In *Erznoznik* v. *City of Jacksonville*, 422 U. S. 205, 213 (1975), for example, we invalidated an ordinance that "would [have] bar[red] a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous. The ordinance also might [have] prohibit[ed] newsreel scenes of the opening of an art exhibit as well as shots of bathers on a beach." The Ohio law as written has the same broad coverage and is similarly unconstitutional.[2]

---

[1] Other provisions of Ohio law relating to child pornography are not phrased in terms of "nudity." For example, Ohio Rev. Code Ann. § 2907.321 (Supp. 1989) prohibits the knowing creation, sale, distribution, or possession of "obscenity involving a minor." Section 2907.322 prohibits the knowing creation, sale, distribution, or possession of materials depicting a minor engaging in "sexual activity" (defined as "sexual conduct or sexual contact," see §§ 2907.01(A), (B), (C)), masturbation, or bestiality. The documented harm from child pornography arises chiefly from the type of *obscene* materials that would be punished under these provisions, rather than from the depictions of mere "nudity" that are criminalized in § 2907.323. See *New York* v. *Ferber*, 458 U. S. 747, 779, n. 4 (1982) (STEVENS, J., concurring in judgment).

[2] The Court hints that § 2907.323's exemptions and "proper purposes" provisions might save it from being overbroad. See *ante*, at 112. I disagree. The enumerated "proper purposes" (*e. g.*, a "bona fide artistic, medical, scientific, educational . . . or other proper purpose") are simulta-

B

Wary of the statute's use of the "nudity" standard, the Ohio Supreme Court construed § 2907.323(A)(3) to apply only "where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals." *State* v. *Young*, 37 Ohio St. 3d 249, 252, 525 N. E. 2d 1363, 1368 (1988). The "lewd exhibition" and "graphic focus" tests not only fail to cure the overbreadth of the statute, but they also create a new problem of vagueness.

1

The Court dismisses appellant's overbreadth contention in a single cursory paragraph. Relying exclusively on our previous decision in *New York* v. *Ferber*, 458 U. S. 747 (1982),[3]

---

neously too vague and too narrow. What is an acceptable "artistic" purpose? Would erotic art along the lines of Robert Mapplethorpe's qualify? What is a valid "scientific" or "educational" purpose? What about sex manuals? See, *e. g.*, *Faloona* v. *Hustler Magazine, Inc.*, 607 F. Supp. 1341 (ND Tex. 1985), aff'd, 799 F. 2d 1000 (CA5 1986). What is a permissible "other proper purpose"? What about photos taken for one purpose and recirculated for other, more prurient purposes? The "proper purposes" standard appears to create problems analogous to those this Court has encountered in describing the "redeeming social importance" of obscenity. See *Pope* v. *Illinois*, 481 U. S. 497, 500–501 (1987); *id.*, at 513–519 (STEVENS, J., dissenting); *Smith* v. *United States*, 431 U. S. 291, 319–321 (1977) (STEVENS, J., dissenting); *Paris Adult Theatre I* v. *Slaton*, 413 U. S. 49, 84–85 (1973) (BRENNAN, J., dissenting); *Miller* v. *California*, 413 U. S. 15, 24 (1973); *Memoirs* v. *Attorney General of Massachusetts*, 383 U. S. 413, 418 (1966) (plurality opinion); *Roth* v. *United States*, 354 U. S. 476, 484–485 (1957).

At the same time, however, Ohio's list of "proper purposes" is too limited; it excludes such obviously permissible uses as the commercial distribution of fashion photographs or the simple exchange of pictures among family and friends. Thus, a neighbor or grandparent who receives a photograph of an unclothed toddler might be subject to criminal sanctions.

[3] Although the phrase "lewd exhibition of the genitals" was offered as an example of a permissible regulation in *Miller* v. *California*, 413 U. S., at 25, it was mentioned in the Court's treatment of a *vagueness* question. Even then the phrase was prefaced with the words "[p]atently offensive

the majority reasons that the "lewd exhibition" standard adequately narrows the statute's ambit because "[w]e have upheld similar language against overbreadth challenges in the past." *Ante*, at 114. The Court's terse explanation is unsatisfactory, since *Ferber* involved a law that differs in crucial respects from the one here.

The New York law at issue in *Ferber* criminalized the use of a child in a " '[s]exual performance,' " defined as " 'any performance or part thereof which includes sexual conduct by a child less than sixteen years of age.' " 458 U. S., at 751 (quoting N. Y. Penal Law § 263.00(1) (McKinney 1980)). " ' "*Sexual conduct*" ' " was in turn defined as " 'actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.' " 458 U. S., at 751 (quoting § 263.00 (3)). Although we acknowledged that "nudity, without more[,] is protected expression," *id.*, at 765, n. 18, we found that the statute was not overbroad because only "a tiny fraction of materials within the statute's reach" was constitutionally protected. *Id.*, at 773; see also *id.*, at 776 (BRENNAN, J., concurring in judgment). We therefore upheld the conviction of a bookstore proprietor who sold films depicting young boys masturbating.

The Ohio law is distinguishable for several reasons. First, the New York statute did not criminalize materials with a *"graphic focus"* on the genitals, and, as discussed further below, Ohio's "graphic focus" test is impermissibly capacious. Even setting aside the "graphic focus" element, the Ohio Supreme Court's narrowing construction is still overbroad because it focuses on "lewd exhibitions of *nudity*" rather than "lewd exhibitions of *the genitals*" in the context of *sexual conduct,* as in the New York statute at issue in *Ferber.*[4]

---

representations or descriptions," *ibid.*, and included in a list with other types of sexual conduct that served to limit its scope.

[4] The Court maintains that "[t]he context of the opinion indicates that the Ohio Supreme Court believed that 'the term "nudity" as used in R. C.

Ohio law defines "nudity" to include depictions of pubic areas, buttocks, the female breast, and covered male genitals "in a discernibly turgid state," *as well as* depictions of the genitals. On its face, then, the Ohio law is much broader than New York's.

In addition, whereas the Ohio Supreme Court's interpretation uses the "lewd exhibition of nudity" test standing alone, the New York law employed the phrase "'lewd exhibition of

---

2907.323(A)(3) refers to a lewd exhibition of the genitals.' *State* v. *Young*, 37 Ohio St. 3d 249, 258, 525 N. E. 2d 1363, 1373 (1988)." *Ante*, at 115, n. 11. The passage cited (and quoted in part) by the Court, however, is a description of appellant's objections at trial and his argument on appeal, not a precise formulation by the Ohio Supreme Court of the "lewd exhibition" test. Indeed, only two sentences after the quotation cited by the majority, the Ohio court referred to "lewdness [a]s a necessary element of *nudity* under R. C. 2907.323(A)(3)." 37 Ohio St. 3d, at 258, 525 N. E. 2d, at 1373 (emphasis added). Earlier in its opinion, the Ohio Supreme Court more carefully articulated its construction of the statute and stated that § 2907.323(A)(3) criminalizes depictions of nudity "where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals." *Id.*, at 252, 525 N. E. 2d, at 1368. It is on this portion of the opinion that I rely.

The Ohio Supreme Court did not say, "[W]here such nudity constitutes a lewd exhibition *of* or involves a graphic focus on the genitals." The noun "exhibition" does not take as a modifier the preposition "on," and the court's repeated reference to the "prohibited state of nudity" as "a lewd exhibition or a graphic focus on the genitals," *id.*, at 251, 525 N. E. 2d, at 1367, leaves no doubt that its choice of words was deliberate. The Ohio court clearly meant the "lewd exhibition" standard to pertain only to nudity and not to displays of the genitals. See also *ibid.* (referring to "morally innocent states of nudity as well as lewd exhibitions").

But were the Court today correct that the Ohio Supreme Court intended to create a "'lewd exhibition' of the genitals" test, I would hardly be reassured. Indeed, such a confused approach by the Ohio Supreme Court, referring in one part of its opinion to "lewd exhibitions of *nudity*" and in another to "lewd exhibitions of *the genitals*," would create a great deal of uncertainty regarding the scope of § 2907.323(A)(3) and likely would render that statute void for vagueness. We, of course, are powerless to clarify or elaborate on the interpretation of Ohio law provided by the state court. See *Freedman* v. *Maryland*, 380 U. S. 51, 60–61 (1965).

the genitals'" in the context of a longer list of examples of sexual conduct: "'actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, [and] sado-masochistic abuse.'" 458 U. S., at 751. This syntax was important to our decision in *Ferber*. We recognized the potential for impermissible applications of the New York statute, see *id.*, at 773, but in view of the examples of "sexual conduct" provided by the statute, we were willing to assume that the New York courts would not "widen the *possibly invalid* reach of the statute by giving an expansive construction to the proscription on 'lewd exhibition[s] of the genitals.'" *Ibid.* (emphasis added). In the Ohio statute, of course, there is no analog to the elaborate definition of "sexual conduct" to serve as a similar limit. Hence, while the New York law could be saved at least in part by the notion of *ejusdem generis*, see 2A C. Sands, Sutherland on Statutory Construction § 47.17, p. 166 (4th ed. 1984), the Ohio Supreme Court's construction of its law cannot.

Indeed, the broad definition of nudity in the Ohio statutory scheme means that "child pornography" could include any photograph depicting a "lewd exhibition" of even a small portion of a minor's buttocks or any part of the female breast below the nipple. Pictures of topless bathers at a Mediterranean beach, of teenagers in revealing dresses, and even of toddlers romping unclothed, all might be prohibited.[5] Fur-

---

[5] The majority concedes that "[i]f, for example, a parent gave a family friend a picture of the parent's infant taken while the infant was unclothed, the statute would apply." *Ante*, at 113, n. 9. To provide another disturbing illustration: A well-known commercial advertisement for a suntan lotion shows a dog pulling down the bottom half of a young girl's bikini, revealing a stark contrast between her suntanned back and pale buttocks. That this advertisement might be illegal in Ohio is an absurd, yet altogether too conceivable, conclusion under the language of the statute. "Many of the world's great artists—Degas, Renoir, Donatello, to name a few—have worked from models under 18 years of age, and many acclaimed photographs and films have included nude or partially clad minors." *Massachusetts v. Oakes*, 491 U. S. 576, 593 (1989) (BRENNAN, J., dissenting) (foot-

thermore, the Ohio law forbids not only depictions of nudity *per se*, but also depictions of the buttocks, breast, or pubic area with less than a "full, opaque covering." Thus, pictures of fashion models wearing semitransparent clothing might be illegal,[6] as might a photograph depicting a fully clad male that nevertheless captured his genitals "in a discernibly turgid state." The Ohio statute thus sweeps in many types of materials that are not "child pornography," as we used that term in *Ferber*, but rather that enjoy full First Amendment protection.

It might be objected that many of these depictions of nudity do not amount to "lewd exhibitions." But in the absence of *any* authoritative definition of that phrase by the Ohio Supreme Court, we cannot predict which ones. Many would characterize a photograph of a seductive fashion model or alluringly posed adolescent on a topless European beach as "lewd," although such pictures indisputably enjoy constitutional protection. Indeed, some might think that *any* nudity, especially that involving a minor, is by definition "lewd," yet this Court has clearly established that nudity is not ex-

---

note omitted). In addition, there is an "abundance of baby and child photographs taken every day without full frontal covering, not to mention the work of artists and filmmakers and nudist family snapshots." *Id.*, at 598 (BRENNAN, J., dissenting); see also *State* v. *Schmakel*, No. L–88–300, (Ohio Ct. App., Oct. 13, 1989), pp. 10–11 ("[A] parent photographing his naked toddler on a bear rug would be threatened with a prison term . . . even though parents ostensibly have the same interests in taking those pictures as they do in keeping a journal or gloating about their children's accomplishments"). None of these examples involves "sexual conduct," *Ferber*, 458 U. S., at 765, yet all might be unlawful under the Ohio statute.

[6] Cf. *Steffens* v. *State*, 343 So. 2d 90, 91 (Fla. App. 1977) (invalidating as impermissibly vague ordinance that prohibited "female waitresses, entertainers or other employees of a public business" from appearing with their breasts "thinly covered by mesh, transparent net or lawn skin tight materials which are flesh colored and worn skin tight, so as to appear uncovered," on the ground that "[i]n view of the scanty female apparel which is now socially acceptable in public particularly on beaches, the description of the type of clothing forbidden by this ordinance is extremely unclear").

cluded automatically from the scope of the First Amendment. The Court today is unable even to hazard a guess as to what a "lewd exhibition" might mean; it is forced to rely entirely on an inapposite case—*Ferber*—that simply did not discuss, let alone decide, the central issue here.

The Ohio Supreme Court provided few clues as to the meaning of the phrase "lewd exhibition of nudity." The court distinguished "child pornography" from "obscenity," see 37 Ohio St. 3d, at 257, 525 N. E. 2d, at 1372, thereby implying that it did not believe that an exhibition was required to be "obscene" in order to qualify as "lewd."[7] But it supplied no authoritative definition—a disturbing omission in light of the absence of the phrase "lewd exhibition" from the statutory definition section of the Sex Offenses chapter of the Ohio Revised Code. See § 2907.01.[8] In fact, the word

---

[7] Other courts have found it necessary to equate "lewd" with "obscene" in order to avoid overbreadth and vagueness problems. See, *e. g., United States* v. *12 200-ft. Reels of Film,* 413 U. S. 123, 130, n. 7 (1973); *Donnenberg* v. *State,* 1 Md. App. 591, 597, 232 A. 2d 264, 267 (1967) ("lewd" and "indecent" equivalent to "obscene"; "[o]therwise the words would be too vague to constitute a permissible standard in a criminal statute"); *State ex rel. Cahalan* v. *Diversified Theatrical Corp.,* 59 Mich. App. 223, 232–233, 229 N. W. 2d 389, 393 (1975); *Seattle* v. *Marshall,* 83 Wash. 2d 665, 672, 521 P. 2d 693, 697 (1974); *State* v. *Voshart,* 39 Wis. 2d 419, 429–431, 159 N. W. 2d 1, 6–7 (1968). But the Ohio Supreme Court specifically rejected this path.

In my judgment, even equating "lewd" with "obscene" would not adequately clarify matters because "the concept of 'obscenity' cannot be defined with sufficient specificity and clarity to provide fair notice to persons who create and distribute sexually oriented materials, to prevent substantial erosion of protected speech as a byproduct of the attempt to suppress unprotected speech, and to avoid very costly institutional harms." *Paris Adult Theatre I* v. *Slaton,* 413 U. S., at 103 (BRENNAN, J., dissenting); see also *Sable Communications of California, Inc.* v. *FCC,* 492 U. S. 115, 133–134 (1989) (BRENNAN, J., concurring in part and dissenting in part); *Pope* v. *Illinois,* 481 U. S. 497, 507 (1987) (BRENNAN, J., dissenting); *id.,* at 513–518 (STEVENS, J., dissenting).

[8] Revised Code § 2905.26(B), which was repealed in 1974, defined "lewdness" somewhat unhelpfully as "any indecent or obscene act." As it now

"lewd" does *not* appear in the statutory definition of *any* crime involving obscenity or other sexually oriented materials in the Ohio Revised Code. See §§ 2907.31–2907.35.

---

reads, the Sex Offenses chapter of the Ohio Revised Code is remarkably *devoid* of any use of the term "lewd." The crime of "importuning," for example, is defined as the solicitation to engage in "sexual activity" or "sexual conduct." Ohio Rev. Code Ann. § 2907.07 (1975). "Public indecency" comprises "expos[ing] one's] private parts," "engag[ing] in masturbation," "engag[ing] in sexual conduct," or "engag[ing] in conduct which to an ordinary observer would appear to be sexual conduct or masturbation." § 2907.09. "Prostitution" is described as engaging in "sexual activity for hire." Ohio Rev. Code Ann. §§ 2907.21–2907.26 (1975 and Supp. 1989).

Currently, several sections of the Ohio Revised Code outside the Sex Offenses chapter contain the term "lewd." See Ohio Rev. Code Ann. § 715.52 (1976) ("Any municipal corporation may . . . [p]rovide for the punishment of all lewd and lascivious behavior in the streets and other public places"); Ohio Rev. Code Ann. § 3767.01(C) (1988) (defining public "nuisance" as "that which is defined and declared by statutes to be such and . . . any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists, or any place, in or upon which lewd, indecent, lascivious, or obscene films or plate negatives [and so on, are exhibited]"); Ohio Rev. Code Ann. § 4715.30(A) (Supp. 1989) (providing that "[t]he holder of a certificate or license issued under this chapter is subject to disciplinary action by the state dental board for . . . [e]ngaging in lewd or immoral conduct in connection with the provision of dental services"); Ohio Rev. Code Ann. § 4931.31 (1977) ("No person shall, while communicating with any other person over a telephone, . . . use or address to such other person any words or language of a lewd, lascivious, or indecent character, nature, or connotation for the sole purpose of annoying such other person").

The Ohio Supreme Court did not refer to any of these provisions in articulating its "lewd exhibition" standard, and they provide little guidance in deciphering the "lewd exhibition of nudity" test. Indeed, although the Ohio public nuisance statute, § 3767.01(C), contains the phrase "lewdness, assignation, or prostitution," it has been interpreted to refer only to conduct or behavior and not to photographs and other printed materials. See *Ohio* v. *Pizza*, No. L–88–045, 18 (Ohio Ct. App., Mar. 10, 1989), p. 18. Thus, Ohio has followed those States that have determined that "the term 'lewdness' does *not* apply to persons who sell pornography." *Chicago* v. *Geraci*, 30 Ill. App. 3d 699, 704, 332 N. E. 2d 487, 492 (1975) (emphasis

Thus, when the Ohio Supreme Court grafted the "lewd exhibition" test onto the definition of nudity, it was venturing into uncharted territory.[9]

Moreover, there is no longstanding, commonly understood definition of "lewd" upon which the Ohio Supreme Court's construction might be said to draw that can save the "lewd exhibition" standard from impermissible vagueness.[10]    At

added); see also *Chicago* v. *Festival Theatre Corp.*, 91 Ill. 2d 295, 302, 438 N. E. 2d 159, 161–162 (1982) (noting that various courts have held that "'lewdness, assignation, or prostitution'" abatement statutes are not applicable to obscene films or books).

[9] Indeed, in other contexts the Ohio Supreme Court has recognized the difficulty of defining the term "lewd." · See, *e. g.*, *Columbus* v. *Rogers*, 41 Ohio St. 2d 161, 163–165, 324 N. E. 2d 563, 565–566 (1975) (holding void for vagueness city ordinance providing that "'[n]o person shall appear on any public street or other public place in a state of nudity or in a dress not belonging to his or her sex, or in an indecent or lewd dress'"); *Columbus* v. *Schwarzwalder*, 39 Ohio St. 2d 61, 62–63, 313 N. E. 2d 798, 800 (1974) *(per curiam)* (reversing, on grounds of overbreadth, convictions under disorderly conduct ordinance that prohibited "'disturb[ing] the good order and quiet of the city'" and "'otherwise violat[ing] the public peace by indecent and disorderly conduct or by lewd or lascivious behavior'"); see also *South Euclid* v. *Richardson*, Nos. 54247, 54248 (Ohio Ct. App., Aug. 18, 1988), pp. 1–2 (invalidating as vague and overbroad municipal ordinance stating that "'no person, organization, club or association shall own, operate, maintain or manage a brothel or solicit, invite or entice another to patronize a brothel or to engage in acts of lewdness or sexual conduct,'" and that defined "'lewdness'" as "'sexual conduct or relations of such gross indecency and so notorious as to corrupt community morals'").

[10] Historically, prohibitions on "lewd" acts grew out of "the archaic vagrancy statutes which were designedly drafted to grant police and prosecutors a vague and standardless discretion." *Pryor* v. *Municipal Court for Los Angeles*, 25 Cal. 3d 238, 248, 599 P. 2d 636, 641 (1979).   We held such vagrancy laws unconstitutionally vague in *Papachristou* v. *City of Jacksonville*, 405 U. S. 156 (1972).   Cf. Ohio Rev. Code § 715.55 (1976) ("Any municipal corporation may provide for: (A) The punishment of persons disturbing the good order and quiet of the municipal corporation by clamors and noises in the night season, by intoxication, drunkenness, fighting, committing assault, assault and battery, using obscene or profane language in the streets and other public places to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by

common law, the term "lewd" included "any gross indecency so notorious as to tend to corrupt community morals," *Collins* v. *State*, 160 Ga. App. 680, 682, 288 S. E. 2d 43, 45 (1981), an approach that was "subjective" and dependent entirely on a speaker's "social, moral, and cultural bias." *Morgan* v. *Detroit*, 389 F. Supp. 922, 930 (ED Mich. 1975).[11] Not surprisingly, States with long experience in applying indecency laws have learned that the word "lewd" is "too indefinite and uncertain to be enforceable." *Courtemanche* v. *State*, 507 S. W. 2d 545, 546 (Tex. Cr. App. 1974). See also *Attwood* v. *Purcell*, 402 F. Supp. 231, 235 (Ariz. 1975); *District of Columbia* v. *Walters*, 319 A. 2d 332, 335–336 (D. C. 1974). The term is often defined by reference to such pejorative synonyms as "'lustful, lascivious, unchaste, wanton, or loose in morals and conduct.'" *People* v. *Williams*, 59 Cal. App. 3d 225, 229, 130 Cal. Rptr. 460, 462 (1976). But "the very phrases and synonyms through which meaning is purportedly ascribed serve to obscure rather than clarify." *State* v. *Kueny*, 215 N. W. 2d 215, 217 (Iowa 1974). "To instruct the jury that a 'lewd or dissolute' act is one which is morally 'loose,' or 'lawless,' or 'foul' piles additional un-

---

*lewd* or lascivious behavior. (B) The punishment of any vagrant, common street beggar, common prostitute, habitual disturber of the peace, known pickpocket, gambler, burglar, thief, watch stuffer, ball game player, a person who practices any trick, game, or device with intent to swindle, a person who abuses his family, and any suspicious person who cannot give a reasonable account of himself") (emphasis added).

[11] Virtually any act running afoul of "conventional" morality can be and has been sanctioned under "lewdness" laws. See, *e. g.*, *Jelly* v. *Dabney*, 581 P. 2d 622, 626 (Wyo. 1978) (describing, as punishable under "lewdness" prohibition, crime of "illicit cohabitation," *i. e.*, a "dwelling or living together by a man and woman, not legally married to each other, in the manner of husband and wife, and indulgence in acts of sexual intercourse") (quotation omitted); *Egal* v. *State*, 469 So. 2d 196, 198 (Fla. App. 1985) ("'[I]f forty years ago either a man or a woman had donned the apparel popular on our beaches today . . . such person would probably have been . . . branded as a lewd, lascivious, and indecent person'") (quoting *State ex rel. Swanboro* v. *Mayo*, 155 Fla. 330, 332, 19 So. 2d 883, 884 (1944)).

certainty upon the already vague words of the statute. In short, vague statutory language is not rendered more precise by defining it in terms of synonyms of equal or greater uncertainty." *Pryor* v. *Municipal Court for Los Angeles*, 25 Cal. 3d 238, 249, 599 P. 2d 636, 642 (1979).

The Ohio Supreme Court, moreover, did not specify the perspective from which "lewdness" is to be determined. A "reasonable" person's view of "lewdness"? A reasonable pedophile's? An "average" person applying contemporary local community standards? Statewide standards? Nationwide standards? Cf. *Sable Communications of California, Inc.* v. *FCC*, 492 U. S. 115, 133–134 (1989); *Pope* v. *Illinois*, 481 U. S. 497, 500–501 (1987); *Pinkus* v. *United States*, 436 U. S. 293, 302–303 (1978); *Smith* v. *United States*, 431 U. S. 291, 300, n. 6 (1977); *Miller* v. *California*, 413 U. S. 15, 24 (1973); *Mishkin* v. *New York*, 383 U. S. 502, 508 (1966). In sum, the addition of a "lewd exhibition" standard does not narrow adequately the statute's reach. If anything, it creates a new problem of vagueness, affording the public little notice of the statute's ambit and providing an avenue for "'policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender* v. *Lawson*, 461 U. S. 352, 358 (1983) (quoting *Smith* v. *Goguen*, 415 U. S. 566, 575 (1974)); see also *Houston* v. *Hill*, 482 U. S. 451, 465, and n. 15 (1987).[12] Given the important First Amendment interests

---

[12] The danger of discriminatory enforcement assumes particular importance of the context of the instant case, which involves child pornography with male homosexual overtones. Sadly, evidence indicates that the overwhelming majority of arrests for violations of "lewdness" laws involve male homosexuals. See *Pryor, supra*, at 252, n. 8, 599 P. 2d, at 644, n. 8. Cf. *Houston* v. *Hill*, 482 U. S. 451 (1987) (prosecution of male homosexual for interfering with a police officer in the performance of his duties); Developments in the Law—Sexual Orientation and the Law, 102 Harv. L. Rev. 1509, 1537–1538, 1542 (1989). "Such uneven application of the law is the natural consequence of a statute which as judicially construed measure[s] the criminality of conduct by community or even individual notions of what is distasteful behavior." *Pryor, supra*, at 252, 599 P. 2d, at 644. The

at issue, the vague, broad sweep of the "lewd exhibition" language means that it cannot cure § 2907.323(A)(3)'s overbreadth.

2

The Ohio Supreme Court also added a "graphic focus" element to the nudity definition. This phrase, a stranger to obscenity regulation, suffers from the same vagueness difficulty as "lewd exhibition." Although the Ohio Supreme Court failed to elaborate what a "graphic focus" might be, the test appears to involve nothing more than a subjective estimation of the centrality or prominence of the genitals in a picture or other representation. Not only is this factor dependent on the perspective and idiosyncrasies of the observer, it also is unconnected to whether the material at issue merits constitutional protection. Simple nudity, no matter how prominent or "graphic," is within the bounds of the First Amendment. Michelangelo's "David" might be said to have a "graphic focus" on the genitals, for it plainly portrays them in a manner unavoidable to even a casual observer. Similarly, a painting of a partially clad girl could be said to involve a "graphic focus," depending on the picture's lighting and emphasis,[13] as could the depictions of nude children on the friezes that adorn our courtroom. Even a photograph of a child running naked on the beach or playing in the bathtub might run afoul of the law, depending on the focus and camera angle.

In sum, the "lewd exhibition" and "graphic focus" tests are too vague to serve as any workable limit. Because the stat-

---

"lewd exhibition" standard " 'furnishes a convenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." ' " *Kolender* v. *Lawson*, 461 U. S., at 360 (quoting *Papachristou*, 405 U. S., at 170, in turn quoting *Thornhill* v. *Alabama*, 310 U. S. 88, 97–98 (1940)).

[13] Since § 2907.323(A)(3) makes it to crime to "view" as well as to possess depictions of nudity, visitors to an art gallery might find themselves in violation of the law.

ute, even as construed authoritatively by the Ohio Supreme Court, is impermissibly overbroad, I would hold that appellant cannot be retried under it.[14]

## II

Even if the statute was not overbroad, our decision in *Stanley* v. *Georgia*, 394 U. S. 557 (1969), forbids the criminalization of appellant's private possession in his home of the materials at issue. "If the First Amendment means anything, it means that the State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." *Id.*, at 565. Appellant was convicted for possessing four photographs of nude minors, seized from a desk drawer in the bedroom of his house during a search executed pursuant to a warrant. Appellant testified that he had been given the pictures in his home by a friend. There was no evidence that the photographs had been produced commercially or distributed. All were kept in an album that appellant had assembled for his personal use and had possessed privately for several years.

In these circumstances, the Court's focus on *Ferber* rather than *Stanley* is misplaced. *Ferber* held only that child pornography is "a category of material the *production* and *distribution* of which is not entitled to First Amendment protection," 458 U. S., at 765 (emphasis added); our decision did not extend to private *possession*. The authority of a State to regulate the production and distribution of such materials is

---

[14] The scope of § 2907.323(A)(3) is restricted to depictions of "a minor who is not the person's child or ward." This does not cure the overbreadth problem, because many constitutionally protected photographs outlawed by the statute, such as commercial advertisements and works of art, circulate outside of the subject's immediate family. See also *ante*, at 124 ("'Judge, if you had some nude photos of yourself when you were a child, you would probably be violating the law . . . . So grandparents, neighbors, or other people who happen to view the photograph are criminally liable under the statute'") (quoting Tr. 3–4).

not dispositive of its power to penalize possession.[15]   Indeed, in *Stanley* we assumed that the films at issue were obscene and that their production, sale, and distribution thus could have been prohibited under our decisions.   See 394 U. S., at 559, n. 2.   Nevertheless, we reasoned that although the States "retain broad power to regulate obscenity"—and child pornography as well—"that power simply does not extend to mere possession by the individual in the privacy of his own home."   *Id.*, at 568.   *Ferber* did nothing more than place child pornography on the same level of First Amendment protection as *obscene* adult pornography, meaning that its production and distribution could be proscribed.   The distinction established in *Stanley* between *what* materials may be regulated and *how* they may be regulated still stands. See *United States* v. *Miller*, 776 F. 2d 978, 980, n. 4 (CA11 1985) *(per curiam); People* v. *Keyes*, 135 Misc. 2d 993, 995, 517 N. Y. S. 2d 696, 698 (1987).   As JUSTICE WHITE remarked in a different context: "The personal constitutional rights of those like Stanley to possess and read obscenity in their homes and their freedom of mind and thought do not depend on whether the materials are obscene or whether obscenity is constitutionally protected.   Their rights to have and view that material in private are independently saved by

---

[15] The distinction drawn in *Stanley* is not an anomaly in the law; to the contrary, we have often protected expression valued by listeners, whether or not the *source* of the communication was fully entitled to the safeguards of the First Amendment.   See, *e. g., Pacific Gas & Electric Co.* v. *Public Utilities Comm'n of California,* 475 U. S. 1, 8 (1986) (plurality opinion); *Consolidated Edison Co. of New York* v. *Public Service Comm'n of New York,* 447 U. S. 530, 533–534, and n. 1 (1980); *First National Bank of Boston* v. *Bellotti,* 435 U. S. 765, 777, and n. 13 (1978); *Lamont* v. *Postmaster General,* 381 U. S. 301, 307–308 (1965) (BRENNAN, J., concurring).   Just as the right of a listener to receive information does not rest on the right of the producer to disseminate it, so the power to ban the production and distribution of child pornography does not imply a concomitant authority to proscribe mere possession.

the Constitution." *United States* v. *Reidel*, 402 U. S. 351, 356 (1971).

The Court today finds *Stanley* inapposite on the ground that "the interests underlying child pornography prohibitions far exceed the interests justifying the Georgia law at issue in *Stanley*." *Ante*, at 108. The majority's analysis does not withstand scrutiny.[16] While the sexual exploitation of children is undoubtedly a serious problem, Ohio may employ other weapons to combat it. Indeed, the State already has enacted a panoply of laws prohibiting the creation, sale, and distribution of child pornography and obscenity involving minors. See n. 1, *supra*. Ohio has not demonstrated why these laws are inadequate and why the State must forbid mere possession as well.

The Court today speculates that Ohio "will decrease the production of child pornography if it penalizes those who

---

[16] Although we held in *Stanley* v. *Georgia* that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime," 394 U. S., at 568, we acknowledged that "compelling reasons may exist for overriding the right of the individual to possess" other types of "printed, filmed, or recorded materials." *Id.*, at 568, n. 11. The majority's reference to this language as support for its decision today, see *ante*, at 110, ignores the fact that footnote 11 in *Stanley* cited only to 18 U. S. C. § 793(d), which criminalizes possession of defense information harmful to U. S. national security. To equate child pornography with state secrets is to read the narrow exception carved in footnote 11 of *Stanley* as swallowing the general rule that the case established. See *State* v. *Meadows*, No. C–850091 (Ohio Ct. App., Dec. 18, 1985) (Doan, J., concurring) ("The reservation [in footnote 11 of *Stanley*] applies to traitorous or seditious materials, and not to child pornography"), rev'd, 28 Ohio St. 3d 43, 503 N. E. 2d 697 (1986), cert. denied, 480 U. S. 936 (1987); see also *Meadows*, 28 Ohio St. 3d, at 356–357, 503 N. E. 2d, at 716 (Brown, J., concurring). Although our decisions even in the First Amendment area have taken special note of the paramount importance of national security interests, see, *e. g.*, *Near* v. *Minnesota ex rel. Olson*, 283 U. S. 697, 716 (1931), we nonetheless have required a strong showing of imminent danger before permitting First Amendment freedoms to be sacrificed. See, *e. g.*, *New York Times Co.* v. *United States*, 403 U. S. 713, 726–727 (1971) (BRENNAN, J., concurring).

possess and view the product, thereby decreasing demand." *Ante*, at 109–110. Criminalizing possession is thought necessary because "since the time of our decision in *Ferber*, much of the child pornography market has been driven underground; as a result, it is now difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution." *Ante*, at 110–111. As support, the Court notes that 19 States have "found it necessary" to prohibit simple possession. *Ibid.* Even were I to accept the Court's empirical assumptions,[17] I would find the Court's

---

[17] That 19 States have prohibited possession of child pornography hardly proves that such an approach is integral to effective enforcement of production and distribution laws. A restriction on speech cannot be justified by such self-referential reasoning. In fact, the difficulty of enforcing possession laws — for example, the requirements of probable cause and a warrant before a search may be undertaken — means that penalties for possession are dubious complements to curbs on production, sale, and distribution. See Note, Private Possession of Child Pornography: The Tensions Between *Stanley* v. *Georgia* and *New York* v. *Ferber*, 29 Wm. & Mary L. Rev. 187, 212 (1987) ("Statutory prohibition of the private possession of child pornography is an inefficient and ineffective means of preventing the serious problem of child sexual abuse").

The federal experience illustrates that possession laws are not an essential element of a successful enforcement strategy. In the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 95–225, 92 Stat. 7, Congress prohibited the production, distribution, and sale of material depicting sexually explicit conduct by minors. See 18 U. S. C. §§ 2251–2253 (1982 ed.). Congress also criminalized the mailing, receipt, or trafficking in interstate or foreign commerce of such material for the purpose of sale or distribution for sale. See 18 U. S. C. § 2252(a) (1982 ed.). But Congress did *not* criminalize mere possession. In the Child Protection Act of 1984, Pub. L. 98–292, 98 Stat. 204, Congress enacted a broad revision of the 1977 law, removing the requirement that trafficking, receipt, and mailing be for the purposes of sale or distribution for sale. See 18 U. S. C. § 2252(a). Further, the 1984 Act eliminated a requirement that material be "obscene" before its production, distribution, sale, mailing, trafficking, and receipt could be found criminal, see § 2252(a); raised the age limit of protection from 16 to 18 years of age, see § 2256(1); and added stiffer penalties, see § 2252(b), criminal and civil forfeiture provisions, see §§ 2253, 2254, and a civil remedy for personal injuries. See § 2255. Even in the

approach foreclosed by *Stanley*, which rejected precisely the same contention Ohio makes today:

> "[W]e are faced with the argument that prohibition of possession of obscene materials is a necessary incident to statutory schemes prohibiting distribution. That argument is based on alleged difficulties of proving an intent to distribute or in producing evidence of actual distribution. We are not convinced that such difficulties exist, but even if they did we do not think that they would justify infringement of the individual's right to read or observe what he pleases. Because that right is so fundamental to our scheme of individual liberty, its restriction may not be justified by the need to ease the administration of otherwise valid criminal laws." 394 U. S., at 567–568.

At bottom, the Court today is so disquieted by the possible exploitation of children in the *production* of the pornography that it is willing to tolerate the imposition of criminal penalties for simple *possession*.[18] While I share the majority's

---

1984 amendments, Congress did not find it necessary to ban simple possession. Nevertheless, the Attorney General's Commission on Pornography determined that "the 1977 Act effectively halted the bulk of the commercial child pornography industry, while the 1984 revisions have enabled federal officials to move against the noncommercial, clandestine mutation of that industry." 1 U. S. Dept. of Justice, Attorney General's Commission on Pornography, Final Report 607 (1986) (hereafter Attorney General's Report).

[18] The Court briefly identifies two other interests that it contends justify Ohio's law. First, the majority describes a state interest in destroying the "permanen[t] record" of the victim's abuse. *Ante*, at 111. I do not believe that the law is narrowly tailored to this end, for there is no requirement that the State show that the child was abused in the production of the materials or even that the child knew that a photograph was taken. Even if the State could recover all copies of the offensive picture, which seems highly unlikely, I do not see how a candid shot taken without the minor's knowledge can "haun[t]" him or her in the years to come, *ibid.*, when there is no indication that the child is even aware of its existence. And if the law's purpose is preventing sexual abuse of children, it is underinclusive to the extent that it does not prevent *parents* from photographing their chil-

concerns, I do not believe that it has struck the proper balance between the First Amendment and the State's interests, especially in light of the other means available to Ohio to

dren in a state of nudity, see, *e. g.*, *Massachusetts* v. *Oakes*, 491 U. S. 576 (1989), or giving others written permission to do so. See, *e. g.*, *Faloona* v. *Hustler Magazine, Inc.*, 607 F. Supp. 1341 (ND Tex. 1985). The only restriction on parents is the nebulous "proper purposes" provision, which is really no restriction at all. See n. 2, *supra*. More fundamentally, even if the State could presume that minors are legally incompetent to consent to sexually explicit photographs, and therefore that all such photographs could be outlawed, it does not follow that the State can prohibit *possession* of such pictures in addition to their *production*. In *Ferber*, the Court was careful to limit its discussion to the "distribution" and "circulation" of photographs taken without a minor's consent. See 458 U. S., at 759 and n. 10; cf. *Butterworth* v. *Smith*, 494 U. S. 624, 635–636 (1990); *The Florida Star* v. *B. J. F.*, 491 U. S. 524, 532–533 (1989); *Smith* v. *Daily Mail Publishing Co.*, 443 U. S. 97, 103 (1979); *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 491 (1975). By analogy, *Stanley* assuredly protects the private possession of obscene adult pornography, even though an argument could be made that "production of adult pornography can be as harmful to adult actors as the production of child pornography is to child actors." Note, 29 Wm. & Mary L. Rev., *supra*, at 204, n. 144; see also Attorney General's Report, *supra* n. 17, at 839–900; Pollard, Regulating Violent Pornography, 43 Vand. L. Rev. 125, 133–134 (1990).

Second, the Court maintains that possession of child pornography may be prohibited "because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." *Ante*, at 111 (citing, in a footnote, the Attorney General's Commission on Pornography). The Attorney General's Commission, however, determined that pedophiles are likely to use *adult* as well as *child* pornography to lower the inhibitions of a child victim. See Attorney General's Report, *supra* n. 17, at 686; see also Brief for Covenant House et al. as *Amici Curiae* 8, n. 9 (characterizing the Court's argument on this point as "factual speculation"). Finally, Ohio's solution—prohibiting private possession—ignores fundamental principles of our First Amendment jurisprudence. "Assuming obscene material could be proved to create a . . . danger of illegal behavior, it would not follow that the expression should be suppressed. Rather, the basic principles of a system of freedom of expression would require that society deal directly with the . . . action and leave the expression alone." T. Emerson, The System of Freedom of Expression 494 (1970). See also *Paris Adult Theatre I* v. *Slaton*, 413 U. S., at 108–110 (BRENNAN, J., dissenting). Thus,

protect children from exploitation and the State's failure to demonstrate a causal link between a ban on possession of child pornography and a decrease in its production.[19]  "The existence of the State's power to prevent the distribution of obscene matter"—and of child pornography—"does not mean that there can be no constitutional barrier to any form of practical exercise of that power." *Smith* v. *California*, 361 U. S. 147, 155 (1959).

### III

Although I agree with the Court's conclusion that appellant's conviction must be reversed because of a violation of due process, I do not subscribe to the Court's reasoning regarding the adequacy of appellant's objections at trial.  See *ante*, at 122–125.  The majority determines that appellant's due process rights were violated because the jury was not instructed according to the interpretation of §2907.323(A)(3) adopted by the Ohio Supreme Court on appeal.  That is to say, the jury was not told that "the State must prove both scienter and that the defendant posssessed material depicting a lewd exhibition or a graphic focus on genitals." *Ante*, at 123.  The Court finds that appellant's challenge to the trial court's failure to charge the "lewd exhibition" and "graphic focus" elements is properly before us, because appellant objected at trial to the overbreadth of §2907.323(A)(3).  See

while acts of sexual abuse themselves may be outlawed, the private possession of photographs, magazines, and other materials may not.

[19] The notion that possession of pornography may be penalized in order to facilitate a prohibition on its production, whatever the rights of possessors, is not unlike a proposal that newspaper subscribers be held criminally liable for receiving the newspaper if they are aware of the publisher's violations of child labor laws.  Cf. L. Tribe, American Constitutional Law 915 (2d ed. 1988).  In both cases, sanctions against possession might increase the effectiveness of concededly permissible regulations on the production process.  But although the need to protect children from exploitation may be acute, it cannot override the right to receive the newspaper or to possess sexually explicit materials in the privacy of the home, especially when less restrictive alternatives exist to further the state interests asserted.

*ante*, at 123–124. I agree with the Court's conclusion that we may reach the merits of appellant's claim on this point.[20]

But the Court does not rest there. Instead, in what is apparently dictum given its decision to reverse appellant's conviction on the basis of the first due process claim, the Court maintains that a separate due process challenge by appellant arising from the Ohio Supreme Court's addition of a scienter element is procedurally barred because appellant failed to object at trial to the absence of a scienter instruction. The Court maintains that § 2907.323(A)(3) must be interpreted in light of § 2901.21(B) of the Ohio Revised Code, which provides that recklessness is the appropriate *mens rea* where a statute "'neither specifies culpability nor plainly indicates a purpose to impose strict liability.'" *Ante*, at 113, n. 9, and

---

[20] The Court's opinion should not be taken to mean that appellant's due process claim with respect to the "lewd exhibition" and "graphic focus" elements would be procedurally barred now had he failed to object at trial. If appellant's due process contention were nothing more than a complaint concerning the statute's overbreadth, the suggestion that he would be barred from raising it now if he failed to object at trial might be plausible. But that is not appellant's argument. Rather, he maintains that his due process rights were violated because the Ohio Supreme Court affirmed his conviction after adding the elements of "lewd exhibition" and "graphic focus" on appeal, despite the fact that appellant had had no reason to design a defense strategy or introduce evidence with these tests in mind. The jury, moreover, might have convicted appellant purely on the basis of the "nudity" definition, without deciding whether the materials depicted a "lewd exhibition of nudity" or involved a "graphic focus" on the genitals. Thus, appellant's due process claim is separate from his overbreadth challenge, see *Shuttlesworth* v. *Birmingham*, 382 U. S. 87, 92 (1965), as even the Court appears to recognize at some places in its opinion. See *ante*, at 121 ("Even if construed to obviate overbreadth, applying the statute to pending cases might be barred by the Due Process Clause"). The due process violation in this case was not complete until the Ohio Supreme Court affirmed appellant's conviction after reinterpreting the statute. Requiring defendants to object *at trial* to an error that does not appear until the appellate stage would advance no legitimate state interest regarding finality or compliance with state procedures.

122–123. I cannot agree with this gratuitous aspect of the Court's reasoning.

First, the overbreadth contention voiced by appellant must be read as fairly encompassing an objection both to the lack of an intent requirement and to the definition of "nudity." Appellant objected to, *inter alia*, the criminalization of the "mere possession or viewing of a photograph," without the need for the State to show additional elements. Tr. 4. A natural inference from this language is that intent is one of the additional elements that the State should have been required to prove. There is no need to demand any greater precision from a criminal defendant, and in my judgment the overbreadth challenge was sufficient, as a matter of federal law, to preserve the due process claim arising from the addition of a scienter element. As the majority acknowledges, our decision in *Ferber* mandated that "prohibitions on child pornography include some element of scienter." *Ante*, at 115 (citing *Ferber*, 458 U. S., at 765). In *Ferber* we recognized that adding an intent requirement was part of the process of narrowing an otherwise overbroad statute, and appellant's contention that the statute was overbroad should be interpreted in that light. I find the Ohio Supreme Court's logic internally contradictory: In one breath it adopted a scienter requirement of recklessness to narrow the statute in response to appellant's overbreadth challenge, and then, in the next breath, it insisted that appellant had failed to object to the lack of a scienter element.

Second, even if appellant had failed to object at trial to the failure of the jury instructions to include a scienter element, I cannot agree with the reasoning of the Ohio Supreme Court, unquestioned by the majority today, that "the omission of the element of recklessness [did] not constitute plain error." 37 Ohio St. 3d, at 254, 525 N. E. 2d, at 1370. To the contrary, a judge's failure to instruct the jury on every element of an offense violates a " 'bedrock, "axiomatic and elementary" [constitutional] principle,' " *Francis* v. *Franklin*, 471 U. S.

307, 313 (1985) (quoting *In re Winship*, 397 U. S. 358, 363 (1970)), and is cognizable on appeal as plain error.    Cf. *Carella* v. *California*, 491 U. S. 263, 268–269 (1989) (SCALIA, J., concurring in judgment); *Rose* v. *Clark*, 478 U. S. 570, 580, n. 8 (1986); *Connecticut* v. *Johnson*, 460 U. S. 73, 85–86 (1983) (plurality opinion); *Jackson* v. *Virginia*, 443 U. S. 307, 320, n. 14 (1979).    "[W]here the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, . . . it is necessary to take note of it on our own motion."    *Screws* v. *United States*, 325 U. S. 91, 107 (1945) (plurality opinion).

Thus, I would find properly before us appellant's due process challenge arising from the addition of the scienter element, as well as his claim stemming from the creation of the "lewd exhibition" and "graphic focus" tests.

### IV

When speech is eloquent and the ideas expressed lofty, it is easy to find restrictions on them invalid.    But were the First Amendment limited to such discourse, our freedom would be sterile indeed.    Mr. Osborne's pictures may be distasteful, but the Constitution guarantees both his right to possess them privately and his right to avoid punishment under an overbroad law.    I respectfully dissent.